MABRA vs. THE CITY OF ATLANTA, and GRIFFIN vs. the same.

All the questions in these cases are effectually disposed of in the case of *Menken vs. City of Atlanta*, just decided, as well as in 72 *Ga.* 314, and 77 *Ga.* 661, 662.

(a) The fact that liquor was obtained previously to the putting in operation of the local option law in Fulton county, would not affect the liability, under the municipal ordinance, for keeping it for illegal sale, passed after the local option act took effect. The defendants were not authorized, before the adoption of that act, to sell liquors at retail without a license, and the evidence shows that they kept the liquors on hand for the purpose of illegal sale by retailing them. The sales actually made were evidence of that purpose.

(b) There is a distinction between the offences defined by the State law and by this ordinance.

March 9, 1887.

Criminal Law. Municipal Corporations. Liquor. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. September Term, 1886.

The plaintiffs in error in these cases were tried before the recorder of the city of Atlanta upon the same charge as that set out in Menken's case just preceding. On the trial of Mabra, the prosecution introduced a witness who testified that, on July 9, 1886, he had bought a quart of beer at the defendant's store and had drunk it just in the rear thereof, where glasses were furnished.

The affidavit of the defendant was admitted in evidence, and was, in brief, as follows : On October 9, 1885, he was granted a license by the board of commissioners of roads and revenues of Fulton county to sell spirituous and malt

liquors at 91 Railroad street, Atlanta. In July, 1886, be-
fore the commencement of sales at his present place, the
license was transferred, in the usual way and by the proper
authorities, to 21 and 23 Decatur street. On July 1, he
obtained from the city a business license extending to Oc-
tober 9, and the business was known to the city authorities
to be the sale of liquor in quantities not less than one
quart. He applied to the law department of the city for
information as to whether liquor sold could be drunk on
the premises, and was informed that liquor legally sold
could be drunk anywhere. He sold by the quart, and beer
was drunk on premises practically controlled by him near
his own, but on the day after he was notified that the po-
lice department of the city denied that such liquor could
be drunk on the premises, he ceased from that time to
allow such drinking, although for six days the city was
under injunction, and defendant could have allowed the
drinking as he was first advised he had a right to do. The
ordinance under which he is prosecuted is void, because
it is an attempt to punish him for an alleged crime against
the State; if his license was good, he was authorized to
sell, and if void, then he was liable to prosecution under
the local option law.

The defendant also introduced in evidence his county
license and the receipt of the tax collector for special tax
as a liquor dealer; also two receipts of the city clerk, dated
July 1, for registration tax on the store on Decatur street,
one stating the business as that of a cigar and tobacco
dealer and the other as that of a grocer.

Both sides introduced the affidavits of J. T. Cooper, in
substance, as follows: The practice in the offices of the
ordinary and county commissioners for twenty years had
been for a person desiring a quart license to sell liquor to
apply at the office, and the license would be issued by the
clerk on payment of the usual fee. In the ordinary way,
the license was issued to Mabra. Afterwards the commis-
sioners received information of such issuance, not by spe-

cial mention of the particular license, but by reports of fees collected from licenses. At no time did they reject an application for a license to sell by the quart or more. The transfer of this license was made by special order of the board.

The defendant was adjudged guilty and fined. He petitioned for a *certiorari*, assigning the following errors:

(1) The recorder erred in holding the ordinance a legal exercise of the chartered rights of the city.

(2) He erred in holding that to sell beer and allow it to be drunk on the premises was a violation of the ordinance.

(3) He erred in finding the defendant guilty under the facts.

The *certiorari* was refused, and the defendant excepted.

In *Griffin's* case, the prosecution introduced testimony to show that he had certain barrels of whiskey in the back part of his store, and that he or his clerk had sold liquor both by the drink and by the half-pint, pint and quart. The whiskey had been received in 1885. The defendant made a statement, in brief, as follows: When the local option law came into force, he had a large stock of liquors on hand and a license to July 1, 1886. He tried to sell all he could, but when his license expired, the city refused to renew it. He stored his liquor in his store until he could send or carry it from Atlanta, which he was negotiating to do; he sold none nor authorized any one else to do so. He gave several drinks to one of the witnesses, who was a poor fellow, who would sometimes come into the store in a terrible state, but never paid for the liquor. He also insisted that he had vested rights to keep or dispose of the liquor left on hand; he had made reasonable effort to dispose of it before the local option law came into effect. He also was adjudged guilty and fined, and excepted to the refusal of his petition for *certiorari*.

HOKE & BURTON SMITH; W. D. ELLIS, for plaintiffs in error.

J. B. Goodwin; J. T. Pendleton; C. D. Hill, solicitor-general, for defendant.

Hall, Justice.

All the questions made in these cases are effectually disposed of in the decision in *Menken's* case, which has just been rendered; and had they not been, then we think they were previously disposed of in the case of *Hill vs. Mayor of Dalton*, 72 *Ga.* 314, and in the cases of *Thorn vs. City of Atlanta*, and *Mayson vs. City of Atlanta*, determined at a previous term of the court. 77 *Ga.* 661, 662. In one of these cases, perhaps in both, it is shown that the liquor kept to be sold in an illegal manner was obtained previous to the putting in operation of the local option act in the county of Fulton. In regard to that, we remark that, in view of the peculiar circumstances of each of these cases, that fact makes not the slightest difference as to their legal liability to answer for a violation of the ordinance. They were not authorized, before the adoption of that act, to sell the liquors by retail without a license, any more than they were after the passage of the act. They kept them on hand, as the evidence in both cases shows, for the purpose of illegal sale by retailing them. The sales that they actually made were evidence of that purpose, or else we have been very greatly mistaken in the application we have made in former cases of the very ordinance in question, and also of the ordinance of the town of Dalton in the case of *Hill*. The judgment rendered by the late Chief Justice in that case is particularly commended to the profession and to the public for its clear and convincing reasoning, and the sound principles of law which it announces and which sustain not only that, but the judgment rendered in this case.

There was no error in refusing to sanction the *certiorari* in either case. The distinction between the offences defined by this ordinance, and those created by the State law,

making a party amenable to the city authorities for an infraction of its ordinance and to the courts of the State for a violation of the public law, is pointed out not only by the foregoing, but by the following cases: *Williams vs. City Council of Augusta*, 4 *Ga.* 509; *Floyd vs. Commissioners of Eatonton*, 14 *Ib.* 354; *Mayor, etc. of Savannah vs. Hussey*, 21 *Ib.* 80; *Karwisch vs. Atlanta*, 44 *Ib.* 204; *McRea vs. Mayor, etc. of Americus*, 59 *Ib.* 168; *Rothschild vs. Darien*, 69 *Ib.* 503; *De Graffenreid's case*, 72 *Ib.* 212.

Judgment affirmed in both cases.