### 1282. WRIGHT v. MAYOR AND COUNCIL OF MACON.

1. The Court of Appeals has full power and authority to determine whether municipal ordinances are unconstitutional.
2. The General Assembly having, by the general tax act, expressed and established the general policy of the State with reference to the existence of "locker clubs," a municipal ordinance inconsistent with the general policy of the State as declared by the legislature is void. Unless it is shown that intoxicating liquors are sold by the club or its employees, the mere assembling of liquors in a bona-fide private club (whose membership is not open to the public at large) can not be controlled by municipal regulation, if the tax imposed by the State has been paid.

Certiorari, from Bibb superior court—Judge Reagan presiding. July 8, 1908.

Argued October 6,—Decided October 26, 1908.

*John P. Ross, Bruce C. Jones,* for plaintiff in error.

*Charles H. Hall, Jr., N. E. & W. A. Harris,* contra.

RUSSELL, J. The plaintiff in error was convicted in the recorder's court of the violation of what is called in the record the "locker ordinance." This ordinance is as follows: "Be it ordained by the Mayor and Council of the City of Macon, and it is hereby ordained by the authority of same: Section 1. That it shall be unlawful for any club, corporation, or association of persons, or number of persons, in this city, whether incorporated or otherwise, to keep or to permit to be kept, in any room or place, or in any place connected therewith directly or indirectly, in which the members of such club, corporation, association of persons or number of persons assemble or frequent, any

alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication. Section 2. Be it further ordained by the authority aforesaid, that any person, member, officer, agent, or servant of any such club, corporation, or association, or other number of persons violating the provisions of this ordinance, upon being arrested, tried, and convicted before the recorder, shall be punished as provided in the act creating the recorder's court of the City of Macon, and the amendments thereto; and that each day in which this ordinance shall be violated by any person or persons shall be held and deemed a separate offense."

The case was submitted to the recorder's court upon the following agreed statement of facts: "The Benevolent and Protective Order of Elks of the United States of America was organized in the city of New York in May, 1868, and, since its organization, has been in continuous existence throughout the United States. Beginning as a voluntary fraternal association, lodges of the order were organized in various cities in various States of the Union, which lodges created and established, by mutual consent and voluntary allegiance, a supreme governing body of the order, known and designated as the Grand Lodge of the Benevolent and Protective Order of Elks of the United States of America, and, as such fraternal order, was incorporated by an act of the Senate and Assembly of the State of New York, on March 10, 1871. On June 19th, 1895, said Order of Elks filed articles of incorporation in the District of Columbia, pursuant to the laws of the United States, providing for the filing of such articles of incorporation by fraternal associations. The objects of said Order of Elks are, to inculcate the principles of charity, justice, brotherly love and fidelity, to promote the welfare and enhance the happiness of its members, to quicken the spirit of American patriotism, to cultivate good fellowship, and to perpetuate itself as a fraternal organization. By its laws it is provided that a subordinate lodge of the order may establish and maintain a club for the social enjoyment of its members, bearing the name of the order, and subject to the limitations and restrictions provided by the laws of the order, and it is provided by its laws that the membership of such club shall be limited exclusively to members in good standing in the lodge establishing and maintaining such club, and that

such club shall be managed and controlled by the officers or trus-- tees of the lodge, or by a house committee appointed by the pre- siding officer of the lodge for that purpose, under such rules and regulations as may be adopted by the lodge and approved by the committee on judiciary of the Grand Lodge. Macon Lodge 230 of the Benevolent and Protective Order of Elks of the United States of America was organized in the city of Macon, Ga., in March, 1892, by authority of and pursuant to the laws of said Order of Elks, as adopted and promulgated by said Grand Lodge of said Order, and since said date has maintained a continuous existence in said city by virtue of a charter granted to it by said Grand Lodge, and under and subject to the laws of said Benevo- lent and Protective Order of Elks of the United States of America. Pursuant to the laws of said fraternal order, the said Macon Lodge established, and for many years past has continuously maintained, a club in said city of Macon, which has been and now is known as the Elks Club, which club is maintained for the social enjoyment of the members of said Macon Lodge. The said Macon Lodge, for more than two years last past, has occupied and now occupies the entire seventh floor of what is known as the Grand Building on Mulberry street in said city of Macon, the same being the top- most floor of said building, by absolute lease from the owner of said building, for its lodge room and club quarters, in which leased premises, to wit, the room on the seventh floor of said Grand Building, the members of said Macon Lodge assemble, frequenting at will the said lodge room and club quarters, under the laws, rules, and regulations of said Order of Elks and said Macon Lodge for the government of the same. No male persons are now or ever have been authorized or permitted to enter, assemble in, or frequent the rooms and premises of said Elks Club, except mem- bers in good standing of said Macon Lodge No. 230, and members in good standing in other subordinate lodges of said Benevolent and Protective Order of Elks of the United States of America (there being no other lodge of said order in Bibb county, except said Macon Lodge), and residents outside of the county of Bibb, who, by special invitation of some member of said Macon Lodge, may by such member be carried to said quarters of said Elks Club and granted temporarily the social privileges thereof. No member of the lodge is permitted to invite or carry any male

citizen of Bibb county to said lodge and club quarters, not a member of the lodge. Any member of said Macon Lodge may invite or carry any lady relative or friend to the parlor and reading-room of said club, and to the lodge room when the lodge is not in session. The employed servants of said Macon Lodge of Elks and its club are authorized and permitted to be and to serve in said Elks Club quarters, but not to enjoy any of the privileges of said club, and said servants are subject to the control and discipline of the house committee of said club, under the rules and regulations governing the same.

"On the 4th day of February, 1908, the said Macon Lodge No. 230 of the Benevolent and Protective Order of Elks of the United States of America, having theretofore caused said Elks Club to be registered with the ordinary of Bibb county, and paid to the tax-collector of said Bibb county $500.00 for special tax as required by the law of Georgia, did permit members of its said Elks Club, which membership is limited exclusively to members in good standing in said lodge, to keep in a room and place forming a part of and connected directly with the aforesaid leased premises of said Macon Lodge and its club, on the 7th floor of said Grand Building in the city of Macon, in which the members of said lodge and club are accustomed to assemble, alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication. And certain members of said lodge and club, pursuant to said permission, did on the date aforesaid keep such liquors, bitters, and drinks in the place aforesaid for their own private use and control. The defendant knew of, and, as a member of said lodge, took part in granting, and assented to the grant of said permission, and has knowledge that some members availed themselves of said permission. Such liquors were the private personal property of each member of said lodge and club who saw fit to keep them, by the permission aforesaid, in the premises leased, occupied, and controlled by said lodge and club as aforesaid, and were so kept as to be readily identified and distinguished as the individual property of the member placing same there. No such liquors or bitters were sold or permitted to be sold or kept for sale in or about said club and lodge quarters, either directly or indirectly, by any persons to any person. On the date aforesaid, when

48

said members were permitted to keep and did keep such liquors as their own private personal property, and for their own private personal use in the premises as aforesaid, the said defendant, C. R. Wright, was a member and officer of said Macon Lodge No. 230 of the Benevolent and Protective Order of Elks of the United States of America, being secretary of said lodge, and was a member of said Elks Club."

The recorder found the plaintiff in error guilty, and he excepted, by certiorari to the superior court. Upon the hearing the certiorari was dismissed. In the petition for certiorari error is assigned upon the ground that the ordinance passed by the Mayor and Council of the City of Macon, for the violation of which the petitioner was convicted, is unconstitutional, illegal, and void: (*a*) Because the Mayor and Council of the City of Macon had no corporate or charter right, power, or authority to pass said ordinance, and the State has not granted such power to said municipal corporation; nor is the power to pass said ordinance incident to any power which has been granted to said municipal corporation. (*b*) Because said ordinance is contrary to the public policy of the State of 'Georgia, as shown by the laws of the State duly enacted, and seeks to take from the petitioner and his associates and fellow citizens a right expressly granted by the State in section 47 of the general tax act, approved August 22, 1907 (Acts of 1907, p. 35). (*c*) The ordinance seeks to take from the State the power to raise revenue. (*d*) The State, by general law, has regulated places where, and upon what conditions, intoxicating liquors may be kept, and has levied and provided for the collection of a tax upon every club, corporation, or association of persons who shall keep or permit to be kept any intoxicating liquors in any place connected directly or indirectly with any room or place in which the members of such club, corporation, or association assemble or frequent. And the said municipal corporation has no power, right, or authority to prohibit the keeping of intoxicating liquors in conformity to the general law of the State, and has no power, right, or authority to amend or annul the said general law of the State. (*e*) The ordinance is not a reasonable exercise of police power of said municipal corporation, and the right to pass the aforesaid ordinance is not within the police power granted to said municipal corporation by the State; and there is

no evidence or fact in the record to indicate that said ordinance was or is necessary for the preservation of health, good order, and morals in said city of Macon.   (f) The ordinance is contrary to the constitution of the State of Georgia, and to the preamble of said constitution, which provides that said constitution is ordained to perpetuate the principle of free government and transmit to posterity the enjoyment of liberty; whereas said ordinance violates the principles of free government and strikes down the liberty of American freemen.   (g) The ordinance is contrary to article 1, sec. 4, par. 1, of the constitution of said State of Georgia, which provides that no special law shall be enacted in any case for which provision has been made by an existing general law. Petitioner shows that provision has been made by existing general law for the places where, and the conditions under which, intoxicating liquors may be kept in said city of Macon, and the said ordinance seeks to vary and annul said existing general law.   (h) The ordinance is contrary to the fourteenth amendment to the constitution of the United States, which provides that no State shall make or enforce any law that shall abridge the privileges or immunities of citizens of the United States, and, a fortiori, that no municipal corporation shall make or enforce any such law.   The petitioner further excepts to the judgment and sentence as contrary to the evidence and contrary to law, because the sentence is excessive and unjust, and violates article 1, section 1, paragraph 9, of the constitution of the State of Georgia, and the 8th amendment to the constitution of the United States.

1.   It is unnecessary to certify to the Supreme Court any question involving the constitutionality of the ordinance under which Wright was convicted, because this court, by the terms of the constitutional amendment creating it, has full power to determine the constitutionality of any law or ordinance which does not involve "the construction of a provision of the constitution of this State or of the United States, or the constitutionality of an act of the General Assembly."   The constitutionality of municipal ordinances can be determined by this court as well as by the Supreme Court.

2.   The general question raised in this case is, whether a social club shall be permitted to keep intoxicating liquors, the private property of its members for their own use, at a place which is neither a public house nor a place of business.   We do not know

that a club may not have a place of business. We do not pass upon this question, because it is not involved in the present case; for if it is a public place of business, the State, and not the City of Macon, would have sole jurisdiction to deal with the offense, if any was committed. A club is defined to be an association of individuals for pleasure or profit. Martin v. State, 59 Ala. 34. In Eichbaum v. Irons, 6 Watts & S. 67, 69 (40 Am. D. 540), it was held that "a club is a definite association organized for indefinite existence; not an ephemeral meeting for a particular occasion, to be lost in a crowd at its dissolution." The rules applicable to such private clubs as keep on hand intoxicating liquors for the use of their membership have been discussed by the Supreme Court of Massachusetts in Com. v. Smith, 102 Mass. 144, and Com. v. Pomphret, 137 Mass. 564 (50 Am. R. 340.) In the latter case Judge Field, delivering the opinion of the court, says: "The word 'club' has no very definite meaning. Clubs are formed for all sorts of purposes, and there is no uniformity in their constitutions and rules. It is well known that clubs exist which limit the number of the members and select them with great care, which own considerable property in common, and in which the furnishing of food and drink to the members for money is but one of many conveniences which the members enjoy. If a club were really formed solely or mainly for the purpose of furnishing intoxicating liquors to its members, and any person could become a member by purchasing tickets which would entitle the holder to receive such intoxicating liquors as he called for, upon a valuation determined by the club, the organization itself might show that it was the intention to sell intoxicating liquors to any person who offered to buy, and the sale of what might be called a temporary membership in the club, with a sale of the liquors, would not substantially change the character of the transaction. One inquiry always is whether the organization is bona fide a club with limited membership, into which admission can not be obtained by any person at his pleasure, and in which the property is actually owned in common, with the mutual rights and obligations which belong to such common ownership, under the constitution and rules of the club, or whether either the form of a club has been adopted for other purposes, with the intention and understanding that the mutual rights and obligations of the

members shall not be such as the organization purports to create, or a mere name has been assumed without any real organization behind it." In the Smith case, supra, the Supreme Court of Massachusetts ruled, that "if the liquors really belonged to the members of the club, and had been previously purchased by them, or on their account, of some person other than the defendant, and if he merely kept the liquors for them, and to be divided among them according to a previously arranged system, these facts would not justify the jury in finding that he kept and maintained a nuisance, within the meaning of the statute under which he is indicted. There would be neither selling nor keeping for sale. On the other hand, if the whole keeping were a mere evasion, and the substance of the transaction were a lending of money to the defendant, that he might buy intoxicating liquors to be afterwards sold and charged to the associates, or if he was authorized to sell or did sell, or keep any of the liquors with intent to sell, to any persons not members of the club, he might well be convicted."

There is nothing in the agreed statement of facts to show that the Elks Club room at Macon was other than a private place. Clearly, then, this club would come under the provisions of paragraph 47 of section 2 of the tax act of 1907 (Acts of 1907, p. 35), unless the Mayor and Council of the City of Macon has power to supersede, exclude, or annul, by ordinance, that provision of law. By the tax act of 1907, supra, the legislature levied a tax "upon every club, corporation, or association of persons who shall keep or permit to be kept in any room or place, or any place connected therewith directly or indirectly, in which the members of such club, corporation, or association assemble or frequent, any intoxicating liquors, the sum of five hundred dollars." The Elks Club of Macon, according to the agreed statement of facts above quoted, kept and permitted to be kept intoxicating liquors in a "place connected" with the "place in which the members of the club assembled or frequented;" and it is admitted that the tax of $500 has been paid. The simple question raised, therefore, is whether the license of the State, for which the fee of $500 has been paid, or the ordinance of the city forbidding this assembling of liquors, shall prevail. The City of Macon is but the creature of the State; all its powers of legislation are the gift of the sovereign State; and each and every power conveyed may be withdrawn at the pleas-

ure of the State. But for the passage of the license tax by the State, there could be no question in our minds that the Mayor and Council of the City of Macon, under the provisions of the charter, could have adopted the ordinance in question. The general welfare clause of the charter of Macon vests the mayor and council with "full power and authority from time to time to make and . establish such rules and ordinances . . as they shall deem requisite and proper for the security, welfare, health, and convenience of the city, and for preserving the peace, order, and good government of the same." It is now universally recognized that regulation of the liquor traffic, even amounting to total prohibition, is but the exercise of police power. It is likewise recognized that municipal corporations, in the exercise of police power, may pass ordinances in aid of the criminal statutes of the State, and, following the trend of the State's general policy, may extend them to subject-matters not included within the exact terms of the State's legislation; that is to say, that the municipal corporation, in aiding the State to carry out its general policy upon a certain subject-matter, may reach and control matters which have not been dealt with by the State. It is evident that the general policy of the State, in the passage of the general prohibition act of 1907, was to stop, or at least to decrease, the *drinking* of intoxicating liquor. And the ordinance of the City of Macon now before us being in aid of that general policy, we think it could be extended to preventing the assembling of liquors at a place where drinking, instead of being decreased, would be increased, although the possession and property right in such liquors was legal, and the place at which such liquors were assembled was not a public place. And although it is always to be borne in mind that delegated powers are to be strictly construed and reasonably exercised, we think the passage of the ordinance in question by the Mayor and Council of the City of Macon, prohibiting the assembling of intoxicating liquors at clubs, is not an unreasonable exercise of the police power, and is fully warranted by the general welfare clause quoted.

It was insisted on the argument, that the purchase and the possession of intoxicating liquors for private use by the citizen is an inalienable right, and that the same right would exist as to a number of citizens lawfully assembled and not otherwise acting in conflict with the provisions of the prohibition law. Without ex-

pressing our individual views upon this subject, the argument is plainly answered by the opinion in *Plumb* v. *Christie*, 103 *Ga.* 686 (30 S. E. 759, 42 L. R. A. 181). In that case the lamented Justice Lewis, delivering the opinion of the court, uses the following striking language to enforce an irresistible argument: "It is idle, in a court of law created for the purpose of declaring legal principles or passing upon legal rights of litigants at issue, to discuss 'inherent and inalienable rights,' supposed to exist in the enlightened conscience or consciousness of mankind, yet undefined by any rule known to the organic or statute laws of a State. In discussing the validity of an act passed by the legislative branch of the government, no light can be gathered by an attempt to show that it contravenes the general purpose for which a free government is established. In all independent States and nations absolute power rests somewhere. In this country it is neither lodged with the executive nor the legislative nor the judicial branches of the government, nor with all combined; but sovereignty rests with the people of the several States. The ultimate source of legislative power is traceable to them; and in their sovereign capacity they have a right to frame laws for their own government, and for the regulation of human conduct on all matters over which exclusive power has not by them been delegated to the Federal government. Acting in their organized capacity, and under the forms of existing laws, they can rend asunder all bonds that are thrown as restraint around individual action, unbridle liberty, and make license as free as the winds of heaven, and as wild as the waves of the sea. They can, on the other hand, so frame their organic and statute laws as to place upon their own necks a yoke as galling as ever serf carried under the edict of a despot. It is eminently in this sense that we live under a free government, which simply means a government created by the people, and which they are absolutely free to change or modify at their pleasure. It is worse than useless then for the courts to undertake to pass upon the validity of a statute by an inquiry as to whether or not it is just or oppressive. To enter into such a field of investigation would be like embarking upon the sea without rudder or compass. A law is not necessarily unconstitutional or otherwise invalid because it is unjust. We live under a constitutional government, and written laws; and the courts can enforce only such

rights as they protect, and remedy such wrongs as they redress."
This authority binds this court.

It was held in *Fears* v. *State,* 102 *Ga.* 274 (29 S. E. 463), that
a municipal corporation could not pass an ordinance which would
destroy all rights in property legally held in possession, by making
it unlawful to hold it; and in *Henderson* v. *Heyward,* 109 *Ga.* 373
(34 S. E. 590, 47 L. R. A. 366, 77 Am. 'St. R. 384), it was held
that the general welfare clause in a municipal charter did not
authorize the passage of an ordinance making it penal to receive
alcoholic liquors, legally purchased, unless the specific tax for so
receiving was paid. Both of these cases originated in prohibition
counties. In the *Fears* case it was sought to enjoin the sheriff
from selling, under judicial process, a stock of liquors which had
been levied upon under a mortgage foreclosure. The reasoning
of the court bears some similarity to that by which we are con-
trolled in the present case,—that is, that the general sovereign
power of the State to control can not be affected by the provisions
of enactments affecting merely inferior subdivisions of the State.
The decision in the *Henderson* case, supra, is not applicable in
the present instance, because in that case the court was dealing
with the fact that no law had been passed which prohibited the
purchase of intoxicating liquors. Since the decision in the *Hender-
son* case the general prohibition law of 1907 has been passed, de-
signed, as we have stated above, to prevent, as far as possible, the
evil of social drinking; and we therefore conceive that an ordinance
which prevents the assembling of liquors for drinking purposes is
in accord with the general trend of the State's policy as evidenced
by the State prohibition law, and is directed more towards the
method in which intoxicating liquor is used than designed to af-
fect the intrinsic private property right in such liquor. A statute
prohibiting the citizen from carrying a pistol concealed, or from
carrying a pistol to a public gathering, is not violative of the
constitutional right of every citizen to have and bear arms. The
State, either itself directly, or by the delegation of appropriate
powers to municipalities, may prescribe the regulations under which
the property right in whisky or any other form of property may
be exercised, without infringing upon the property right in such
articles. Nay, the State may go further, as a matter of police
regulation, in carrying out its paramount duty of protecting the

peace, good order, and dignity of its citizens, and prohibit altogether the exercise of a property right in such articles as it adjudges to be dangerous to the welfare of its citizens. This is the theory of the decision to which we have referred; but it is unnecessary for us to decide at this time how far this ruling is applicable, for the reason that by the tax act of 1907 the legislature took from the city the power to regulate clubs and associations that might permit their members to have and use intoxicating liquors at their meeting-places, by expressly licensing such clubs and authorizing them to do the very things prohibited by this city ordinance.

The general prohibition law (Acts of 1907, p. 82) is exclusive of municipal legislation upon the subject of where liquor may not be kept, so far as it deals with the subject; and the legislature having adopted certain specific regulations, the power was taken from the city of doing more than aiding the State in the enforcement of these regulations. The prohibition law covers: (1) the sale or barter of intoxicating liquors; (2) the giving away of such liquors to induce trade at the place of business; (3) keeping or furnishing them at any public place; (4) the manufacture; (5) keeping on hand at the place of business of the owner. The city could not punish for a violation of the prohibition law in any of these five respects; because the power of the State to deal with them has been exclusively retained. In this state of the law, we think a municipal corporation might have imposed regulations as to the keeping of liquors at private places, in the exercise of its police power; and perhaps it may still do so, provided the private place is not one of the clubs mentioned in paragraph 47 of section 2 of the tax act of 1907. Having passed a general prohibition bill which did not deal with intoxicating liquors in a private place, the legislature proceeded to deal with that subject in a tax act, as we have stated above, expressly licensing the assembling of liquors at certain places designated. This was tantamount to a withdrawal from all of the subdivisions of the State of the right to enforce any prohibitory ordinance in conflict with the policy declared by the State in the tax act; because no local exception was expressed. "The courts will not infer that the legislature intends to authorize a local departure from the general policy of the State, unless the local exception is expressed in specific terms." *Sanders* v. *Butler, 30 Ga.* 679; *Ordinary of Baldwin*

*County* v. *Retailers, etc.,* 42 *Ga.* 325; *Miller* v. *Shropshire,* 124 *Ga.* 829 (53 S. E. 335) ; *Watson* v. *Thomson,* 116 *Ga.* 546 (42 S. E. 747, 94 Am. St. R. 137) ; *Henderson* v. *Heyward, Fears* v. *State,* supra; 17 Am. & Eng. Enc. L. (2d ed.) 378, 380. In the *Watson* case, supra, the court deals fully with the principle that a municipal corporation, under the general welfare clause of its charter, may pass ordinances in aid of the enforcement of State laws, and yet that it is not to be presumed that the General Assembly intended that the general welfare clause, though broad in its terms, should be construed as authority for the municipal corporation to interfere with one doing something lawful for him to do, under a settled policy of the State, expressed in its laws. By the imposition of the $500 tax upon clubs, the State declared its policy with reference to such keeping of liquor as is dealt with in the tax act; and any departure from this policy must commence with the General Assembly itself, either by direct law to this effect, or by granting some subordinate public corporation express authority to make such departure.

Counsel for the defendant in error recognized the force of this principle, and contended that the express authority to pass the ordinance in question is conveyed by the proviso contained in the tax act. The proviso to paragraph 47, quoted above, is in these words: "provided that nothing in this section shall be construed to license or permit the keeping of any intoxicating liquors, in any place now prohibited by law or which may hereafter be prohibited by law." The contention of counsel for the defendant in error is, that the prohibition contained in the ordinance of the City of Macon in question is prohibition by law within the terms and meaning of the proviso in the tax act. We can not concur in this contention. It is clear that the legislature, in providing that the license specified in the tax act should not permit the keeping of intoxicating liquors in any place *now* prohibited, referred to those places, mentioned in the prohibition act, to which we have adverted,—public places and places of business, these being the only places where the keeping of liquor was prohibited; and that the concluding clause, referring to places which may hereafter be prohibited by law, was an expression by the legislature of its reservation of the right hereafter to prohibit the keeping of intoxicating liquors at such additional places as it might see fit.

The contention that municipal ordinances are necessarily included or intended by the use of the word "law," in the proviso to the tax act, can not be sustained. Ordinances are mere rules or by-laws of a municipal corporation. In *Bearden* v. *Madison*, 73 *Ga.* 184, it was held that the ordinances referred to had the force of laws, and yet they are distinguished from the law of the land. As stated by Blackstone, any rule of conduct is, in one sense, a law. But it can not be presumed that the legislature, in using the word "law," in the proviso to subdivision 47 of section 2 of the tax act, had in mind the by-laws of a municipality, any more than it was considering the laws of nature; for the courts do not take judicial cognizance of municipal ordinances. *Mayson* v. *Atlanta*, 77 *Ga.* 663 (5). If the courts are not presumed to know the municipal ordinances of the various municipalities, can it be presumed that the legislature knew? And if not, can it be presumed that the legislature had them in mind? And if the legislature intended municipal ordinances to conflict with the tax regulations which it was passing, and intended to except such municipalities as saw fit to prohibit all keeping of intoxicating liquors for any purpose whatever, we are of the opinion that the legislature would have added to the word "law," in the proviso, the words, "or by the ordinances of any city or town in this State;" so that the proviso would have read, "provided, that nothing in this section shall be construed to license or permit the keeping of any intoxicating liquors in any place now prohibited by law, or which may hereafter be prohibited by law, or by the ordinances of any city or town in this State."

In *Haywood* v. *Savannah*, 12 *Ga.* 410, Judge Lumpkin said: "If then the act of 1809 is not repealed, either directly or by implication, by the act of 1849, surely it will not be seriously contended that such a construction should be put upon the general powers granted to this corporation under the latter act as would enable them to repeal, by an ordinance, a law of the State. We deny the right of the legislature to confer such a power upon a *subordinate* authority." It is held, that "the General Assembly can not confer upon a corporation the power, by ordinance, to repeal a statute of the State. A by-law of a corporation, repugnant to the constitution, common, or statute law of the State, is void." Id. 405 (5). We cite this for the reason that it affords additional

ground for supposing that the legislature did not intend municipal ordinances, when the term "law" was used in the proviso. That the word "law" does not ordinarily include municipal ordinances, see 21 Am. & Eng. Enc. L. (2d ed.) 947; 29 Century Dig. 834, §122; *Williams* v. *Augusta,* 4 *Ga.* 513; *Mabra* v. *Atlanta,* 78 *Ga.* 679 (4 S. E. 154) ; *Haywood* v. *Savannah,* supra. In *Hill* v. *Dalton, 72 .Ga.* 319, where the right of trial by jury was being insisted upon in a trial for a violation of a municipal ordinance, Chief Justice Jackson held that the right of jury trial could not be maintained, because the offense was against the city, and not against the laws of the State; thus clearly distinguishing the ordinance of the city from the law of the land, and, by implication, holding that city ordinances are not included within the term "law" as used in this State. In *Mabra* v. *Atlanta,* supra, Justice Hall draws the same distinction, and cites, as pointing out the distinction between infraction of municipal ordinances and violation of the public law, *Floyd* v. *Commissioners,* 14 *Ga.* 354 (58 Am. D. 559·) ; *Mayor &c. of Savannah* v. *Hussey,* 21 *Ga.* 80 (68 Am. D. 452) ; *McRea* v. *Americus,* 59 *Ga.* 168 (27 Am. R. 390) ; *Rothschild* v. *Darien,* 69 *Ga.* 503. The code (Pol. Code, §1) specifically declares what are the laws of this State; and the only "ordinances" mentioned are those of the Convention of 1877.

Aside from any other consideration to which we have adverted, our judgment is controlled by the 47th paragraph of the tax act of 1907 (Acts of 1907, p. 35), which we have already quoted, and the decision in *Miller* v. *Shropshire,* supra, in which the Supreme Court, in passing upon the "bucket shop" tax, said: "The licensing of the business of speculating in 'futures' does not necessarily imprint sovereign approval upon that occupation, but it enables persons who are thus permitted to engage in the business to escape the consequences which would ensue were they warned not to pursue their calling, upon peril of being subjected to a deterring penalty, to be enforced by a criminal proceeding, or both. It is undoubtedly within the province of our General Assembly to divide those who hazard their money upon chance into two distinct classes, one to be known as 'gamblers,' the others as 'financiers.' It may not be equally apparent that the interests of the commonwealth are best conserved by sending the gamester to the chain-gang and licensing the professional specula-

tor to open a place of business and invite the public at large to there call upon him and place their bets upon the probable rise or fall in the stock market. But be this as it may, the General As-- sembly has advisedly adopted, and has for many years pursued; this definite business policy; and we can not defeat it. The gen-- eral tax acts above referred to are purely revenue measures, though enforceable by penalty for failure to pay the imposed tax, as distinguished from police measures designed to regulate internal affairs. *Racine Iron Co.* v. *McCommons,* 111 *Ga.* 542-3" (36 S. E. 866, 51 L. R. A. 134). In support of the ruling, the cases of·. Houghton *v.* State, 41 Tex. 136, Overby *v.* State, 18 Fla. 178, and Rogers *v.* State, 26 Ala. 76, are cited. When the legislature, as a. revenue measure, imposed a tax of $500 upon "locker clubs," and especially when attention was called, by the proviso, to the con--tents of the previous prohibition bill, a general policy was fixed by the General Assembly; and the courts will not infer that the· legislature intends to permit any departure on the part of the· subordinate local municipal governments from the general policy which has been adopted by the State, unless the exception is specifically and expressly denominated. *Sanders* v. *Butler, Ordinary* v. *Retailers, Miller* v. *Shropshire, Henderson* v. *Heyward, Fears* v. *State,* supra; 17 Am. & Eng. Enc. L. (2d ed.) 378-380. Under· the ruling in *Miller* v. *Shropshire,* supra, we conclude that the· legislature having determined that the keeping of liquors in private places should not be prohibited in the exercise of the police power inherent in the State, it determined to raise a revenue by imposing a tax on "locker clubs," and a proviso was added, making it clear that no part of the recently enacted prohibition law was intended to be repealed or modified thereby. It is idle to discuss the policy or morality of this species of legislation; because we can not question the right or power of the lawmakers to adopt a general public policy upon any subject, even though it be "for revenue. only." The trial judge erred·in not sustaining the certiorari.

*Judgment reversed.*

PowELL, J., specially concurring. I concur, because obedience to the spirit of the binding precedent of *Miller* v. *Shropshire,* 124 *Ga.* 829 (53 S. E. 335), forbids that I should do otherwise. My personal judgment has never yielded assent to the principle of that case; for, if it means anything, it means that the State, by

taxing a noxious occupation, gives such countenance to it as to amount to the State's consent for it to be conducted, free from penalties which otherwise would ensue. I have always thought that the better view was expressed by Judge Cooley in Youngblood *v.* Sexton, 32 Mich. 406 (20 Am. Rep. 664). I quote his language: "The idea that the State lends its countenance to any particular traffic by taxing it seems to us to rest upon a very transparent fallacy. It certainly overlooks or disregards some ideas that always must underlie taxation. Taxes are not favors; they are burdens; they are necessary, it is true, to the existence of the government, but they are not the less burdens, and are only submitted to because of the necessity. It is deemed advisable to make careful provision to preclude these burdens becoming needlessly oppressive; but it is conceded by all the authorities, that under some circumstances they may be carried to an extent that will be ruinous to individuals. It would be a remarkable proposition, under such circumstances, that a thing is sanctioned and countenanced by the government when this burden, which may prove disastrous, is imposed upon it, while, on the other hand, it is frowned upon and condemned when the burden is withheld. It is safe to predict that if such were the legal doctrine, any citizen would prefer to be visited with the untaxed frowns of government rather than with those testimonials of approval which are represented by the demands of the tax-gatherer. It may be supposed that some idea of special protection is involved when a business is taxed; taxation and protection being reciprocal. If the tax upon any particular thing was the consideration for the protection given to the owner in respect to it, this might be so; but the maxim of reciprocity in taxation has no such meaning."