11326. FLOOD *v.* MAYOR AND ALDERMEN OF SAVANNAH

1. The ordinance codified as section 1201 of the Code of Savannah is not unconstitutional for any reason alleged in the attack made on it in this case.
2. A permit to keep a cow in the city of Savannah cannot be revoked by the health officer, "unless he shall have first given to the holder of the same not less than five days' notice in writing of his intention to revoke such permit, and an opportunity to be heard by the Board of Sanitary Commissioners as to why such should not be done."
3. The facts in this case do not authorize the conviction of the accused.

DECIDED JULY 14, 1920.

Certiorari; from Chatham superior court—Judge Meldrim January 23, 1920.

*Simon N. Gazan,* for plaintiff in error.
*Shelby Myrick, Edwin A. Cohen,* contra.

BLOODWORTH, J. In the police court of the City of Savannah Mrs. Flood was tried and convicted " for keeping a cow within the city limits without a permit, and for refusing to obey the order of the health officer to dispose of said cow as directed by said officer." Upon the case being carried by certiorari to the superior court, the judge overruled the certiorari; and the case is before us for review.

1. It is insisted that "the ordinance under which the prosecution proceeds, codified as section 1201 of the Code of Savannah, is unconstitutional and void, as violative of article 1, section 1, paragraph 2, of the constitution of the State of Georgia, as codified in section 6358 of the Code of 1910, as follows: 'Protection to person and property is the paramount duty of government, and

shall be impartial and complete,' in that said ordinance is unfair and discriminatory, does not operate equally in the revocation of licenses and permits, in that it denies an opportunity to be heard .to those alleged to keep cows in a congested district, yet provides a means of hearing to those keeping cows elsewhere; said ordinance further offends the constitution in that it provides a hearing, before revocation of permit, to those who are charged with violating some law or regulation of the city or health officer, but does not provide a hearing, before or after revocation, to those who violate the regulation against keeping cows in a congested district; in other words, for the violation of any law or regulation the holder of the permit is given five days' notice of intention to .revoke, and an opportunity to be heard by the Board of Sanitary Commissioners, but for the alleged keeping of a cow in a congested district the holder is given five days' notice, but no provision is made for a hearing before the Board. of Sanitary Commissioners, thereby depriving those alleged to keep cows in a congested district of a hearing, but granting to other holders of permits, for violations of other regulations, an opportunity to be heard."

We cannot agree with this contention of learned counsel. An examination of section 1201 of the Code of Savannah, as it comes to us in the record, discloses the fact that under both conditions above referred to, an opportunity is given to be heard by the Board of Sanitary Commissioners. Both of the conditions are included in the same ordinance, and the ordinance provides that *" all permits pursuant to this ordinance* may at any time be revoked by the health officer, subject to the approval of the Board of Sanitary Commissioners, for the violation of any law or ordinance of the city of Savannah having to do with the *care of cows,* dairies, milk, and the sale of milk, *or of any regulation* of the health officer governing the *keeping of cows,* stables for cows, dairies, milk, and the sale of milk in the city of Savannah; provided, however, that *no such permit* shall be revoked by the health officers for the foregoing reasons *unless he shall first have given the holder of the same not less than five days' notice in writing* of his intention to revoke such permit, and an *opportunity to be heard* by the Board of Sanitary Commissioners as to why such should not be done." (Italics ours.) It will be seen from the

above that the opportunity to be heard before revocation applies to *all permits* referred to in the ordinance where the violation related to certain specified things, including "care of cows" or "keeping of cows," as in the instant case. In addition to the above, subdivision "a" of said ordinance, which refers to *congested population* and impairment of public health, provides that "the health officer of the city of Savannah, *with the consent and approval of the Board of Sanitary Commissioners,* may prohibit the keeping of cows . . *provided the holder of the permit shall be given at least five days' notice before his permit is so revoked."* (Italics ours.) Construing the ordinance as a whole, it is clear that what is said in the first portion of the ordinance, relative to notice and a hearing before revocation, is applicable to "all permits pursuant to this ordinance." The ordinance is therefore not unconstitutional for the reason assigned. Questions which involve "the construction of a provision of the constitution of this State or of the United States, or the constitutionality of an act of the General Assembly," must be determined by the Supreme Court, but this court "has full power and authority to determine whether municipal ordinances are unconstitutional." *Wright* v. *Mayor & Council of Macon,* 5 *Ga. App.* 750(1) (64 S. E. 807). See also *Neal* v. *City of Dublin* 20 *Ga. App.* 263(1) (92 S. E. 1021).

2. Another ground of the motion alleged that the defendant was not given five days' notice, as provided by the said ordinance, before the permit was revoked. The record shows this to be true. On July 31 the health officer addressed a letter to Mr. Flood as follows: "The permit issued to you in 1912 to keep a cow for your personal use is hereby revoked. You will be given seven days to dispose of said cow." This was not a notice that the permit would be revoked, but one that it had actually been revoked. The defendant should have had at least five days' notice before her permit was revoked, and an opportunity to be heard by the Board of Sanitary Commissioners as to "why such should not be done." The health officer failed to give her this notice and this opportunity as provided by the ordinance. Such a notice is a condition precedent to revoking the permit, and the matter stands just as if no action had been taken by the health officer.

3. The specific portion of the ordinance alleged to have been violated, and the portion to which all the evidence seems to be

directed, was that which provides that "the health officer of the city of Savannah, with the consent and approval of the board of sanitary commissioners, may prohibit the keeping of cows in any section of the city of Savannah where, because of *congested* population, the keeping of cows would impair the public health." W. J. Spann, an inspector of the city of Savannah, testified: " The defendant, Mrs. Flood, held a permit to keep a cow for personal use issued by the health officer in 1912. On July 31, 1919, this permit was revoked. I made an investigation for the health officer and found that Mrs. Flood did *not* keep the cow in a congested district, but that the cow was kept in a pasture east of the Tybee depot, but brought up in the city twice a day for the purpose of milking, and then returned to the pasture. The cow was brought to the yard at 511 Congress Street East to be milked. I examined the yard and found it to be *entirely clean and sanitary.* I never saw the cow in that yard, but have seen it in the lane on its travel to and from the pasture." (Italics ours.)    C. J. Melvin, Chief Sanitary Inspector, testified: "I inspected the premises where the cow of Mrs. Flood is brought up for milking. *The place is sanitary.* The cow is *kept* in a pasture which is *not* in a congested district." There is no evidence that the cow was kept in a section of the city where, "because of *congested population,* the keeping of the cow would impair the public health." (Italics ours.)    There was no evidence whatever of any unsanitary condition or of any *congested population,* but all the evidence showed that the cow was kept in a distant pasture and carried back there as soon as she was milked. The defendant repeatedly offered to submit to any test or inspection which the health officer might require, and agreed to dispose of the cow if the inspection showed it to be unhealthy or the milk unclean. As alleged in the petition for certiorari, "no inspection of the cow or milk was made as requested by Mrs. Flood. No complaint was made by the health officer that the cow was diseased or the milk unhealthy." It thus appears that the finding of the recorder was contrary to the finding of the facts in the case. For the reasons set forth above, the judge of the superior court erred in overruling the certiorari.

*Judgment reversed. Broyles, C. J., and Luke J., concur.*