No. 9.—JOHN L. MOODY, administrator, &c. plaintiff in error, *vs.* THOMAS J. THRELKELD, defendant in error.

[1.] It is essential to the validity of a promissory note, that it should be certain as to the person to whom, as well as by whom it is made payable; and parol proof is inadmissible to supply this defect.

[2.] A note payable to *bearer*, only, is a valid note.

[3.] A note issued with a blank for the payee's name, may be filled up by any *bona fide* holder with his own name as payee, and it is a good promissory note, as to him, from its date.

[4.] A note payable to the administrator of a particular estate is a good promissory note, *id cestem est quod cestem reddi potest.*

[5.] A suit renewed or re-commenced by the representative of a deceased *plaintiff*, is brought by the same *plaintiff*, in contemplation of the Act of 1847. *Cobb,* 569. So also where it is instituted by successive trustees, where the cause of action and *cestui que trust* are the same. *Ib.*

[6.] Definition of a *lawyer-like* argument.

[7.] Courts, in construing Statutes, deeds and other writings, must have some respect to the *substance*, and not adhere too closely to the *letter*. Thus, by the grant of a remainder, a reversion will pass, and *e converso.*

[8.] A special power to an agent must be strictly pursued.

[9.] If A signs his name to a blank paper, and delivers it to B, to be filled up by him, for that purpose, A constitutes B his general agent, *quoad*

the filling up the note. And A will be bound, as to a *bona fide* holder, though B should not act in accordance with the private understanding between A and himself.

Debt, in Spalding Superior Court.   Tried before Judge STARKE.   November Term, 1852.

This was an action of debt, brought by John L. Moody, as administrator on the estate of John H. Newland, deceased, against the defendant in error, on the following note :

" On or before the first day of January, eighteen hundred and forty-two, we or either of us promise to pay to administrators of estate of John H. Newland, eleven hundred and twenty dollars, and eighty-five cents, for value received.   August, 22d, 1840.                          T. J. THRELKELD.
                                          GEORGE W. SIMS.

The action was commenced on the 22d day of January, 1851.

The defendant, among other pleas, filed that of the Statute of Limitations, and also the following plea of "*non est factum :*"

" And for a further, and other plea in this behalf, this defendant says that the said supposed promissory note upon which suit has been instituted in the case above stated, never was made, or intended to be, or have been made, by him in its present shape and form ; because, he says that his signature which appears to the said supposed note was written on a blank piece of paper, and the said supposed note afterwards written above it ; and this defendant further says, that when he wrote his name, it was only to be used as security, and not as principal, and so it was expressly understood by the party to whom he gave his name as aforesaid.   Wherefore he says, his name was not used for the purpose it was given, or for which he intended it should have been used, but his name appears as principal, when it was given to be used only as security, and was therefore used and applied for and to a dif-

Moody *vs.* Threlkeld.

ferent purpose than the one for which it was so given, as aforesaid. And this defendant further says, that he denies giving or authorizing any one else to give, take, or receive, the aforesaid promissory note sued on by plaintiff, in its present form, and according to its present tenor and effect, and that he does not consider it in the manner it now appears, and in the form in which it was drawn and signed, placing his name as principal instead of as security, his act or deed; and of this he puts himself upon the country," &c. To this plea an affidavit verifying the same was attached.

On the trial, it appeared in evidence that the note sued on, was made in the State of Mississippi, and that at the time of its execution, Jacob R. Hill was administrator on the estate of John H. Newland, and that Hill commenced an action on said note, against the defendant, in Pike Superior Court, on the 10th day of December, 1847, which case was non-suited at the August Term, 1850, of said Court.

The defendant moved for a non-suit on the following grounds—

1st. Because the paper sued on is not a note on which an action will lie, being too uncertain as to the payee.

2d. Because the case is barred by the Statute of Limitations, and the facts proven do not take it out of the bar of the Statute.

3d. Because the plaintiff has not overcome the plea of *non est factum*, which defendant alleges is pleaded.

The Court sustained the motion, and awarded a non-suit, and counsel for plaintiff excepted, and also moved the Court to reinstate the case, and allow him to amend his declaration; which motion the Court refused, and counsel for plaintiff excepted, and upon these exceptions has assigned error.

ARNOLD, for plaintiff in error.

MOORE & ALFORD, for defendant in error.

VOL. XIII. 8

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the paper sued on a promissory note? We think so—most clearly.

We recognize the general principle, that it is essential to the validity of a promissory note, that it should be certain as to the person to whom it is payable; (*Story on Pro. Not.* §33, *note* 3,) and that parol proof is inadmissible to supply a defect in this respect. *Ib.* §35. But this does not mean that the person to whom the note is payable, should be made known by name, on the face of the note itself.

[2.] It is admitted, that a note payable to bearer merely, without mentioning any name, is a valid note;

[3.] And that a note issued with a blank, for the payee's name, may be filled up by any *bona fide* holder, with his own name as payee, and that then it will be treated as a good promissory note, to him, from its date. And it is upon the familiar maxim *id cestum est quod cestum reddi potest.*

[4.] And it is upon the same principle, that a note payable to the administrator of an estate, has always been held by the Courts of Georgia a good promissory note. A reference to the records of the Court of Ordinary, will show with unerring certainty to whom its obligations apply.

Suppose this note had been made payable to John H. Newland in his lifetime—the face of the paper would not disclose who was the legal representative of the payee, to whom alone payment was to be made, and who alone had the right to transfer it. In that case, as in this, recourse would have to be had to the records of the Ordinary. Indeed, there would be greater uncertainty in that case than this, for it would be doubtful whether the representative were executor or administrator; whereas this paper shows upon its face the character of the trustee, namely, that he is administrator.

Or, take another illustration: suppose, as is frequently the case, that the notes of an estate are distributed among the heirs, would not the division constitute such a link in the title of the holder, as to enable him to sue for, and recover

the note? And yet greater uncertainty would exist in that case, also, as to the ownership of the paper, or the person to whom it was payable, than in the present.

[5.] Is the Statute of Limitations a bar to this recovery?

It is contended in behalf of the defendant in error, that Hill, the administrator of Newland, *might* have sued on this note, in his individual character, at its maturity. Indeed, the assumption in the argument is, that he *must* have sued in his own right, and that he could not have maintained the action in his trust character, and that no obstacle has occurred to the prosecution of his suit, and that failing to do so, the remedy is tolled or taken away.

But we apprehend the very reverse of this proposition to be true. Had the note been payable to Hill, with the usual addition of administrator, &c. he *might* have treated the note as his private property, and declared on it, as such. But even then, on the other hand, he would not be bound to have done this, but might also have sued in his representative capacity, and the defendant would have been estopped from denying the fact that he was administrator. And conceding that a proper mode of declaring on *this note*, would have been to have averred, that it was made payable to Jacob R. Hill, by the name and style of administrator on the estate of John H. Newland; still it cannot be questioned for a moment, that the note may be treated as the property of Newland's estate, and sued on, as it has been, as such. And if this be true, it is an effectual reply to the plea of the Statute. But this note is payable to the administrator of the estate of Newland. The legal title vests in him, *as trustee*, and it is doubtful whether the suit could be brought by him in any other right. In this character, at any rate, he did sue within six years from the time the cause of action accrued. The case remained on the docket till August 1850, when it was non-suited. It was re-commenced by his successor, in January, 1851, within less than six months from the time when the first suit was dismissed. No plea to the disability of the plaintiff to maintain either the first or second suit, in his

representative character, has ever been filed. Consequently the Statute has not interfered to save the defendant.

The Act of 1847, " to amend and explain the several Acts for the limitation of actions and avoiding suits at law," provides, that whenever any case now or hereafter pending in any of the Courts of this State, either at Law or in Equity, commenced within the time limited by law, shall be discontinued, dismissed or the plaintiff therein become non-suited, and the plaintiff's claim may be barred during the pending thereof, by any law now in force in this State, the plaintiff may at any time within six months from such termination of the case, and not after, renew or re-commence the same in any Court having jurisdiction thereof in this State, any law, usage or custom to the contrary notwithstanding: Provided that nothing in the Act shall be so construed as to authorize the renewal of any case after a second discontinuance, dismissal or non-suit.   *Cobb's New Digest,* 1, 569.

It is insisted that according to the terms of this Statute, none but the *plaintiff* in the first suit can renew or re-commence the action, so as to be entitled to the benefit of the Act. Grant it.   If suit is instituted by the payee of a note, and he dies after being non-suited, and the action is renewed by his administrator, is it not the same plaintiff ?   So, where there is a succession of administrators, as in the present case, the *trust* is the same, although filled by different *individuals.* The *cestui que trust,* for whose benefit the suit is brought, being the same, and the cause of action the same, the plaintiff is the same.

[6.] I will not quote upon my brother Alford, who as well as his modest opponent, has argued this case in a lawyer-like manner—that is to say, briefly, closely, earnestly, yet without declamation, and upon authority—the thread-bare saw, *qui hæret,* &c.

[7.] But I submit to his candor, whether this construction of the Act be not a little too strict?   We must, after all, in construing Statutes, deeds and other writings, have some respect to the *substance,* and not adhere too closely to the *letter.*   If

by the grant of a remainder, a reversion will pass and *e concesso*, (*Hobart* 27. 2 *Black Com.* 379,) would it not be to defeat the intent of this remedial Statute, to hold that successive administrators to the same estate, suing upon the same cause of action, were not the same plaintiff?

[8.] Did the plea filed by the defendant in this case, and which was intended as a plea of *non est factum*, put the plaintiff upon the necessity of introducing proof as to the execution of the note? In our judgment, it most certainly did not.

The plea should have been demurred to. For, admitting it to be true, it is no denial of the plaintiff's right to recover on the note. It confesses the note was signed in blank, to be filled up by Sims, to whom it was delivered for that purpose. The complaint is, that it was not filled up according to the intent for which it was signed. And the discrepancy or non-conformity is this, that Sims was to be principal in the note, and he, Threlkeld, *security* only: whereas it is alleged that they are made to occupy upon this paper a position the very reverse of this.

[9.] By an inspection of the note, it will be seen, that the defendant is mistaken in point of fact. It is true, Threlkeld's name is signed to the note, but that does not constitute him, necessarily, a principal. But suppose it did, this is a matter exclusively between him and Sims. The note coming into the possession of a *bona fide* holder, will be held valid, as to him. Threlkeld signs a blank paper intended to be converted into a promissory note, and to be filled up by Sims for that purpose, into whose hands it is placed. He thus clothes his agent with a general power of attorney. No other construction can be placed upon the transaction, from the face of it. What has a *bona fide* holder to do with the private understanding between the parties?

But, we repeat, there is nothing in the terms of this contract, contrary to the alleged agreement between Threlkeld and Sims. Which is principal, and which security, is a matter of no consequence to the holder of the paper. It may

constitute a matter of proof hereafter between themselves. Both are alike liable to the holder. The plea does not pretend, that Sims was to add the word "*security*" to Threlkeld's name. Why did he not put it there himself, when he signed his name to the paper?

The case of *Batty vs. Carswell and Carswell*, (2 *Johns. Rep.* 48,) is relied on by defendant's counsel. David Carswell, one of the defendants, applied to Abner Carswell, the other defendant, to be his surety to the plaintiff on a note for $250, payable *in six months*, which he consented to do, and directed the witness to sign his name to such a note. Instead of that, witness put Abner Carswell's name to a note for $250, payable in *sixty days*. And it was held that Abner Carswell was not liable, for the reason that a special authority must be strictly pursued. And such is the rule of the law. *Andrews vs. Kneeland*, 6 *Cowen's Rep.* 354. *Nixon vs. Hyserott*, 5 *John. Rep.* 58. *Beals vs. Allen*, 18 *John. Rep.* 363. 3 *Term Rep.* 762.

But in the case at bar, the party signed his own name to a blank paper, and thus as to third persons, constituted Sims his general agent *quoad* the filling up the note. But viewing it in the light of a special person, it was, if the plea be true, strictly pursued. Sims did no more than he was authorized to do by his principal.

As to the amendment, we see no reason why it should not be allowed, when the case shall have been re-instated. It is on the appeal and in the last resort, and the application seems to fall within the *Fifth* Common Law Rule of Practice. See *General Index, by Cobb and Lumpkin, p.* 584.

Judgment reversed.