## MILLER & COMPANY *v.* SHROPSHIRE.

Irrespective of whether a purely speculative transaction in cotton is a "gaming" contract, within the meaning of the Civil Code, § 3671, inasmuch as the General Assembly permits one paying a license tax to engage in the business of buying and selling "futures," he can not be subjected to the penalty imposed by that section, which declares that "money or property delivered up upon" a gaming consideration "may be recovered back from the winner by the loser, if he shall sue for the same in six months after the loss," or, if he shall fail to bring suit within that period, "by any person, at any time within four years [thereafter], for the joint use of himself and the educational fund of the county."

Argued June 28, 1905.—Decided February 15, 1906.
Rehearing denied March 2, 1906.

Attachment. Before Judge Reid. City court of Atlanta. February 3, 1905.

W. F. Shropshire brought suit by attachment against Miller & Company, a non-resident partnership, alleging, that the defendant operated in the city of Atlanta what is commonly known as a "bucket shop;" that the business of the defendant was to buy and sell cotton "futures" upon margins, it not being contemplated by either the buyer or the seller that there should be any actual delivery of the cotton, but it being understood that they should settle according to the market prices on specified dates and that the margins were placed to cover the fluctuations of the market; and that in his dealings with the defendant, the plaintiff had lost $490 to the defendant, by speculating in this manner upon the rise and fall in the price of cotton. The defendant demurred to the petition, on the ground that it set forth no cause of action, for the reasons, (1) that the plaintiff sought to recover money lost upon an illegal contract, in which the plaintiff appeared to be in pari delicto; and (2) that the plaintiff sought to recover money lost upon an alleged "gaming" contract, when it appeared from his petition that the contract was not a "gaming" contract in the sense of the statute authorizing the recovery from the winner of money hazarded under such a contract. The court overruled the demurrer, and the defendant excepted.

*Hoke Smith* and *Henry Hull,* for plaintiffs in error, cited: Civil Code, §§3671, 3537; *Ga. R.* 21/46; 69/610; 71/400; 104/459; 114/548; 67 N. E. 948; 1 Am. St. 749; 10 Id. 30; 40 Am. R. 140; 43 Id. 476; 23 Ill. 493; 4 Mo. 536, 599; 60 N. W. 65; 13 Id. 786; 33 S. W. 783; 10 Fed. 243; 109 Id. 760; *Ga. R.* 3/176; 5/423; 16/420; 30/547; 41/315; 44/642; 55/235; 57/180; 59/647; 85/734; 118/373.

*J. F. Golightly,* contra, cited: Civil Code, §3671; *Ga. R.* 71/400, 673; 65/210; 68/124, 276; 75/366; 77/606; 79/796; 82/243; 83/663; 86/246; 99/303; 102/808; 113/529.

Evans, J. (After stating the facts.) In the view we take of this case, it is unnecessary to express any opinion upon the question whether, as a purely abstract proposition, a speculation in cotton "futures" is to be regarded as a "gaming" contract; nor are we called on to say whether such a transaction is, or is not, within the purview of our Civil Code, §3671. The real and controlling ques-

tion presented for decision is whether or not the penalty provided for by that section can be enforced against one who conducts what is commonly known as a "bucket shop." For a number of years past, the General Assembly has imposed upon every individual or firm engaged in the business of buying or selling "futures" on farm products, or other commodities, a license tax of one thousand dollars per annum. (See citation of the various general tax acts in *Jones* v. *Stewart,* 117 *Ga.* 985-6; and Acts of 1904, p. 31.)' The business is licensed by express act of our legislature. It is not, of course, to be presumed that the State has thereby abandoned its long-declared policy of declining to lend the aid of its courts 'to enforce "wagering contracts" (Civil Code, §3668); nor, on the other hand, can it be assumed that the General Assembly contemplated that persons paying the license tax were to be permitted to conduct the business at the peril of being forced to disgorge all sums of money placed with them as "margins" and lost by their customers in the licensed speculations incident to the business. Such duplicity is not to be attributed to our lawmakers, in the absence of a definitely expressed intent to compel the payment of the license tax and then impose upon the persons taxed a penalty for conducting the business, as though it were an illegal enterprise in which they had absolutely no right to engage. Thus, it has been held that where the pursuit of a particular calling, such as maintaining a gaming-house, has been prohibited by a criminal statute, yet if the legislature subsequently imposes a license tax upon that occupation, those who engage in it after paying the required tax are exempt from prosecution and punishment for a penal offense. Houghton *v.* State, 41 Tex. 136; Overby *v.* State, 18 Fla. 178; Rodgers *v.* State, 26 Ala. 76. The same reasoning upon which these decisions are based applies with equal force to the collection of a penalty in a civil proceeding which is designed to take the place of a fine or of punishment by imprisonment. The licensing of-the business of speculating in "futures" does not necessarily imprint sovereign approval upon that occupation, but it enables persons who are thus permitted to engage in the business to escape the consequences which would ensue were they warned not to pursue their calling, upon peril of being subjected to a deterring penalty, to be enforced by a civil or criminal proceeding, or both. It is undoubtedly within the province of our General Assembly to

divide those who hazard their money upon chance into two distinct classes, one to be known as "gamblers," the other as "financiers." It may not be equally apparent that the interests of the commonwealth are best conserved by sending the gamester to the chaingang and licensing the professional speculator to open a place of business and invite the public at large to there call upon him and place their bets upon the probable rise or fall in the stock market. But be this as it may, the General Assembly has advisedly adopted, and has for many years pursued, this definite business policy, and we can not defeat it. The general tax acts above referred to are purely revenue measures, though enforceable by penalty for failure to pay the imposed tax, as distinguished from police measures designed to regulate internal affairs. *Racine Iron Co.* v. *McCommons,* 111 *Ga.* 542-3. Taxes can not, of course, be raised by imposing upon the taxpayer a burden which he is unable to carry. *Morton* v. *Macon,* 111 *Ga.* 164. To hold that the proprietor of a licensed "bucket shop" is subject to the penalty of making good all losses sustained by his customers would be to place him in this situation.

*Judgment reversed. All the Justices concur, except Beck and Atkinson, JJ., who did not preside.*