[Civ. No. 11468. First Appellate District, Division Two.—September 16, 1940.]

EMPIRE VINTAGE COMPANY (a Corporation), Respondent, v. R. E. COLLINS et al., as Members of the State Board of Equalization et al., Appellants.

Earl Warren, Attorney-General, and J. Albert Hutchinson, Deputy Attorney-General, for Appellants.

Sefton & Quattrin for Respondent.

STURTEVANT, J.—The defendants have appealed from a judgment directing the repayment of an alleged instalment of excise taxes and declaring there was no tax due. Before we proceed to state the contentions of the defendants it is necessary to set forth the conditions of the record. In its complaint the plaintiff alleged:

"I. That the defendants, R. E. Collins, Harry B. Riley, Andrew J. Gallagher, Fred E. Stewart and Wm. G. Bonelli, are members of the State Board of Equalization of the State of California, duly appointed and qualified as such, and that they constitute said Board of Equalization of the State of California.

"II.   That Arlin E. Stockburger, Harry B. Riley and Webb Shadle, are members of the State Board of Control of the State of California, duly appointed and qualified as such and they constitute said Board of Control of the State of California.

"III.   That Charles G. Johnson is, and at all times hereinafter mentioned was, the State Treasurer for the State of California, duly appointed and qualified as such.

"IV.   Plaintiff, Empire Vintage Company, is now and was at all the times herein mentioned a corporation, organized and existing under and by virtue of the laws of the State of California, duly qualified to do business in the State of California, and having an office and place of business in the City and County of San Francisco, in said State; that plaintiff Empire Vintage Company also does business under the fictitious style and name of Imperial Distributing Company and is duly qualified so to do.

"V.   That plaintiff is now and was at all times herein mentioned, a duly authorized and licensed distributor of distilled spirits under the Alcoholic Beverage Control Act of the State of California.

"VI.   That by the provisions of Section 24 of said Alcoholic Beverage Control Act, it was provided that an Excise Tax was imposed upon all distilled spirits sold in this state on and after July 1, 1935.

"VII.   That plaintiff above named at all times complied with and performed the provisions of the said Alcoholic Beverage Control Act as the same was then in force and effect, and purchased and delivered as required therein Excise Stamps on all sales made by it upon which the said Excise Tax was imposed.

"VIII.   That during the year 1938, and pursuant to the authority conferred upon it by said Alcoholic Beverage Control Act said State Board of Equalization caused an examination to be made of the books and records of plaintiff kept at its place of business and as a result of said examination, said State Board of Equalization determined that the sum of $6,148.38 as additional excise tax was due and payable from plaintiff and caused a complaint to be filed against the plaintiff as a result thereof;

"That thereafter and pursuant to the provisions of said Alcoholic Beverage Control Act, plaintiff filed a petition for

reconsideration of said additional assessment and complaint and demanded an oral hearing upon said petition, which was granted. That said petition was heard before said State Board of Equalization and thereafter said State Board of Equalization notified plaintiff that it had ordered the amount of $6,148.38 to be levied upon plaintiff as and for additional excise tax and that said levy was final and said sum of $6,148.38 was immediately due and payable at the time of said levy and that plaintiff's licenses would be suspended on October 10, 1938, if said $6,148.38 was not paid. That thereafter the said defendants agreed that plaintiff could pay the same under protest at the following rate: $1,500.00 by October 10, 1938, and the remainder in five equal monthly instalments;

"That immediately thereafter and before the 10th day of October, 1938, plaintiff paid the State Board of Equalization the sum of $1,500.00 pursuant to said agreement;

"That said $1,500 was paid under protest and the grounds of said protest were as follows:

"(1) That the order made at the meeting of September 28, 1938, was and is in excess of the authority granted the Board by the Alcoholic Beverage Control Act;

"(2) That no evidence was presented to the Board and the Board had no evidence before it upon which to act, to establish the fact that the Empire Vintage Company, doing business as Imperial Distributing Company, sold any of the distilled spirits within the State of California involved in the complaint before the State Board of Equalization;

"(3) That no evidence was presented to the Board, and the Board had no evidence before it upon which to act, to establish the fact that the Empire Vintage Company, doing business as Imperial Distributing Company, delivered any of the distilled spirits involved in the complaint within the State of California to any on- or off-sale licensee or that such distilled spirits packages, if in wholesole packages, were opened by any on- or off-sale licensee; or that such distilled spirits, if not in wholesale or original packages, were received by any on- or off-sale licensee;

"(4) That none of the distilled spirits involved in the complaint were delivered by Empire Vintage Company, doing business as Imperial Distributing Company, to any on- or off-sale licensee;

"(5) That none of the distilled spirits involved in the complaint were received by any on- or off-sale licensee in original cases or wholesale packages and opened by such on- or off-sale licensee; or were received by any on- or off-sale licensee in cases other than original cases or in broken case lots.

"IX. That no excise tax was due under said Alcoholic Beverage Control Act of the State of California from plaintiff, and said sum of $6,148.38 was illegally levied and plaintiff is entitled to recover the said sum of $6,148.38 with interest as provided in Section 32 of said Alcoholic Beverage Control Act of the State of California."

In their answer the defendant admitted all of the foregoing allegations excepting paragraphs VII and IX. The allegations of those two paragraphs, VII and IX, were denied.

The trial court found that all the allegations of the complaint contained in paragraphs I, II, III, IV, V, and VII, are true and continuing it found as follows:

"II. That on the trial of this action the plaintiff waived all right to a refund of the sum of $11.48 which was charged in the audit of the Board to represent a sale of distilled spirits to a retail licensee.

"III. That, other than as found in Paragraph II, the Board had no information, facts or evidence before it at its hearings that any other distilled spirits owned by the plaintiff had been sold and delivered to, or ever received in broken cases or ever received in original cases which were opened by, on- or off-sale licensees under the Alcoholic Beverage Control Act.

"IV. That, other than as found in Paragraph II, none of the distilled spirits involved in the orders of the Board of June 14, 1938 and September 28, 1939, were ever sold and delivered to on- or off-sale licensees under the Alcoholic Beverage Control Act, or were ever received in broken cases or ever received in original cases and opened by on- or off-sale licensees under the Alcoholic Beverage Control Act;

"V. That during the period July 1, 1935, to June 30, 1937, the plaintiff made exchanges of distilled spirits with other wholesale distilled spirits licensees and failed to keep a record of such exchanges; that during said period the Board provided no form for, nor issued any instructions concerning,

the keeping of records of sales of distilled spirits, except sales to on- and off-sale retail licensees.''

The defendants present the contention that the findings do not support the judgment. As we think that point is well founded, we will discuss it and it will not be necessary to discuss the other contentions they have made.

The record discloses that the plaintiff is a wholesaler of distilled spirits, duly licensed, and engaged in that business. The record does not disclose that it manufactures, rectifies, or otherwise deals in broken packages. The plaintiff's right to do business is, in this state, a privilege granted by virtue of the provisions of section 22, article XX, of the Constitution of the State of California and the statutes enacted to carry said section into effect. (*State Board of Equalization* v. *Superior Court*, 5 Cal. App. (2d) 374 [42 Pac. (2d) 1076].) Heretofore the plaintiff applied for a license and one was issued to it to act as a wholesaler of distilled spirits. By the terms of section 24 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123) it is provided: ''Sec. 24. An excise tax is hereby imposed *upon all distilled spirits sold* in this State on and after July 1, 1935, at the following rates:'' (then follows a table of rates and grades). It should be noted in passing that the levy is made *''upon all distilled spirits sold''*. In section 6, it is provided that the plaintiff's license authorized it to sell to on-sale and off-sale licensees of the State Board of Equalization of the State of California (hereinafter referred to as the ''board''). In section 33 it is provided how the tax levied in section 24 will be collected. Briefly stated, it provides that the board will cause to be printed stamps representing various sums and will sell them to the wholesaler, and that in making a sale of spirits the wholesaler will see that stamps in proper sums will *''accompany''* each delivery made by the wholesaler. In section 38 it is provided that the board shall prescribe all necessary rules and regulations to carry out the provisions of said act, to require reports from any licensee, to examine the books and records of such licensee, and that the agents of the board may visit and inspect the premises of such persons. The act contains no authorization permitting a wholesaler to sell to any person except as above mentioned. On the contrary, it contains penal provisions regarding any sales made in violation of the terms of the act. Section 40 pro-

vides that the board shall have the power to suspend or revoke a license for the violation of said act, and sections 41–49 provide the procedure to be followed.

Taking up the findings, and the pleadings therein referred to, there is no finding that the plaintiff paid its taxes on "all distilled spirits sold in this state" by it between July 1, 1935, and June 30, 1937. There are findings that it paid taxes on sales, recorded in its books, made to on-sale and off-sale licensees. But there is no finding that it did not make sales to other persons, nor, if it did that such deliveries were "accompanied" by stamps. Paragraph VI of the complaint alleged conclusions of law. It was not denied nor was there a finding thereon. In paragraph VII of its complaint the plaintiff alleged performance of all provisions of the Alcoholic Beverage Control Act. That paragraph was denied. There was no finding thereon. It is appropriate at this point to add that, except as herein noted, there was no evidence purporting to prove the allegations thereof. In paragraph VII the plaintiff alleged that the defendant board caused an examination to be made of plaintiff's books and records and determined there was due from the plaintiff $6,148.38 as additional excise tax; that plaintiff was granted a rehearing; that the board thereafter affirmed its determination; and that later the plaintiff paid $1500 under protest. The contents of the protest are set forth. All of these allegations were found to be true. But no one of said allegations purports to affirm that the plaintiff had made no sale not contained in its books; nor, if it had, that such delivery was "accompanied" by the necessary stamps. ■ The finding of the defendant board was, at least by inference, that numerous sales had been made which were not "accompanied" by necessary stamps. In making its findings the board was acting as a fact finding body. (*McDonough* v. *Goodcell*, 13 Cal. (2d) 741 [91 Pac. (2d) 1035, 123 A. L. R. 1205].) In doing so, it was clearly authorized by the provisions of the statute (secs. 40–44). That its findings were not conclusive is true. Power to review said findings is expressly granted to any court of competent jurisdiction. (Sec. 46.) But, in the absence of a showing that they were arbitrary or capricious, the findings should not be ignored but should be treated as the findings of referees. The plaintiff contends the board made no allowance for loss by evaporation. But there was no

showing that any container was open for evaporation. ■
Again, it contends it made exchanges and gifts for which the
board made the plaintiff no allowance. In reply it should
be noted that the discrepancy between the disbursements,
and the returns, amounted to 1280 cases per annum; but the
plaintiff's manager did not, and testified he could not, give
the name, place, and time of a single transfer. The board
was not bound by such testimony to the extent that the courts
may say as a matter of law that the board's finding, ignoring
the claimed gifts and exchanges, was "arbitrary and capri-
cious". (10 Cal. Jur. 1145, "Evidence", sec. 363.) It fol-
lows that the finding of the board was not in any respect
successfully attacked in the trial court and that it should
stand and be given effect. The other findings are to the effect
that the plaintiff had paid its taxes on those sales to on-sale
and off-sale licensees. There is no finding that other sales,
whether legal or not, were not made or that the tax had been
paid thereon. But to support a judgment in favor of the
plaintiff it is obvious the findings of the court should clearly
show that the plaintiff, for the period July 1, 1935, to
June 30, 1937, had paid taxes on all sales, legal or illegal,
and that the defendants arbitrarily compelled it to pay the
amount sued for. The findings do not make that showing.

■ The plaintiff claims the amendments (Stats. 1937,
chaps. 681 and 758) are not applicable. Conceding, without
deciding the point, the claim is immaterial. In no place do
we find the question involved. Again the plaintiff contends
the board could not collect the alleged deficit except by mak-
ing a reassessment and that under the act of 1935 it was not
given power to reassess. That it was not given power to re-
assess is true. But bearing in mind we are dealing with an
excise tax, it is obvious no assessment or reassessment is in-
volved. Section 24 in effect was both the assessment and
levy of the tax. (*Dollar Sav. Bank* v. *United States*, 86 U. S.
227, 240 [22 L. Ed. 80].) He who would object to the
amount of the tax was bound to present his objection to the
legislature having said section under consideration. ■
Finally the plaintiff contends that under the statute no pro-
vision is made for collecting a deficiency tax. It says the
following questions must be answered: "From whom? Under
what procedure? Was there a deficiency in this case?" Of
course, the answers are immediately at hand. The tax is to

be collected from the wholesaler, this plaintiff (sec. 33). It is to be collected under the procedure hereinabove indicated and the amount of the deficiency is to be ascertained as the board ascertained it in the present case. Bearing in mind that the act of 1935 was a revenue act, that the very gist of it was to collect revenue, and that efficiency was of the utmost importance, the record presents no serious questions. The statute makes no distinction between acts whether past or present. It provides one procedure. It is not even claimed that such procedure is not fair and just. The same procedure applies whether there is one violation or several violations of the statutory duty to collect and pay over the tax imposed. These conclusions find complete support in *State Board of Equalization* v. *Superior Court,* 5 Cal. App. (2d) 374 [42 Pac. (2d) 1076].

The judgment appealed from is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 14, 1940. Edmonds, J., Houser, J., and Carter, J., voted for a hearing. Gibson, C. J., and Traynor, J., did not participate.