40676.   UNDERCOFLER v. V. F. W. POST 4625.
40677.   UNDERCOFLER v. AMERICAN LEGION POST 69.

DECIDED NOVEMBER 12, 1964—REHEARING DENIED
NOVEMBER 30, 1964.

712

*Eugene Cook, Attorney General, Louis F. McDonald, Assistant Attorney General, H. Perry Michael,* for plaintiff in error. *Barrie L. Jones,* contra.

PANNELL, Judge. ■ Irrespective of whether or not the Revenue Commissioner may by necessity, or implication, have authority to cancel or abate an assessment to correct what may at the time appear to be an error of fact or law, and after so canceling or abating, make a new assessment to correct the erroneous cancellation or abatement of the first (see *Georgia R. &c. Co. v. Wright,* 124 Ga. 596, 615, 53 SE 251; Commissioner v. Newport Industries Inc., 121 F2d 655, 657), such rule has no application to the present case where the first assessment was not canceled for any such reason, but was canceled solely to effect an extension of time to the taxpayer for appeal from the assessment contrary to the legislative provision limiting the time in which the taxpayer might appeal to 15 days. The statute gives the Commissioner no such authority either expressly or by necessary implication. It follows that the cancellation of the first assessment and the issuance of the second assessment and

the third assessment, in no way correcting any errors in the first assessment, were nugatory.

Nothing to the contrary was ruled in *Nikas v. Oxford*, 103 Ga. App. 721 (120 SE2d 677). In that case there were material changes in the executive order regarding the suspension of a license under the Alcoholic Beverage Act, so as to be tantamount to a new determination. Here we have no modification or new determination, but new assessments identical with the previous assessments; nor do we have here the question of the time of a suspension of a license which rests within the discretion of the Commissioner and which may be revoked or changed at his discretion.

■ In view of the special concurrence by Chief Judge Felton, concurring in the judgment of affirmance, but on the ground that the tax assessments were void because the Commissioner had no jurisdiction to make an assessment on illegal sales, we have added the second headnote and division to this opinion.

Section 2 of the Georgia Retailers and Consumers Sales and Use Tax Act (Ga. L. 1951, pp. 360, 362) as amended by Ga. L. 1960, pp. 153, 158, levies and imposes a tax "on the retail purchase, retail sale, rental, storage, use or consumption of tangible personal property, and the services" therein described, at certain rates.

Section 3 (c) 1 defines "retail sale" and "sale at retail" and provides that "for the purpose of the tax imposed by this Act, these terms shall include but shall not be limited to the following: . . . (c) [as amended by the Act of 1953, p. 193] Sales of tickets, fees or charges made for admission to or voluntary contributions made to places of amusement, sports, or entertainment, including billiard and pool rooms, bowling alleys, amusement devices, musical devices, theaters, opera houses, moving picture shows, vaudeville, amusement parks, athletic contests, including wrestling matches, prize fights, boxing and wrestling exhibitions, football and baseball games, skating rinks, race tracks, public bathing places, public dance halls or any other place at which any exhibition, display, amusement or entertainment is offered to the public or place or places where an admission fee is charged, together with charges made for the operation

of coin-operated musical devices and *other such coin-operated amusement devices* and charges made for participation in games and amusement activities." Paragraph (c) (2) of Sec. 3, as amended by various Acts, lists numerous exceptions to the general terms "sale at retail," etc.

In construing this Act, the Supreme Court of this State in *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616 (112 SE2d 601), a case involving the question of whether or not sales to the United States Government or any instrumentality thereof are taxable under the Act, said: "Unless retail sales made by the retailer are exempt under provisions of the Act, he must pay the tax on them. *The nature of the sales is of no moment,* except as the exclusion provisions of the Act might affect them." (Emphasis ours). It was said in that case that the "Georgia Sales and Use Tax is noted for the fact that it is all-inclusive, covering everything from the cradle to the grave. Exemptions are the rare exception." In the dissenting opinion in that case, it was said: "As previously pointed out, it is . . . the legal duty of a Georgia retail dealer in tangible personal property to collect the tax imposed by the Act upon *any, every,* and *all* retail sales made by him, except those sales which the Act exempts, . . ." Under these circumstances, it would seem that the Act taxes all retail sales as defined therein except those specifically exempted under the terms of the Act.

The Sales and Use Tax Act in its terms being general and in its terms containing express exemptions from the generality of the terms levying the tax "it would seem unreasonable to assume, without a clear expression of such intention, that the legislature intended that a tax should be imposed on those who complied with the mandate of the law but that those who flagrantly flaunt the law should not be required to pay such tax." 118 Pa. Super. 58 (180 A 144). The above case from which the quotation was taken involved a tax on stored spirituous and vinous liquors, and the tax was sought to be imposed upon illegally manufactured whiskey. For similar cases, see Empire Vintage Co. v. Collins, 40 Cal. App. 2d 612 (105 P2d 391); annotations in 43 ALR 799, 51 ALR 1026, 118 ALR 827, 160 ALR 1225.

We find nothing in the Act which indicates any intention on

the part of the legislature to differentiate between legal and illegal sales, and the general language of the Act should not be limited to legal sales only merely because the Act does not specifically tax illegal sales by referring to them as such. This fact does not automatically eliminate illegal sales. Unless there are other reasons for so construing the Act, it could be as readily argued that since the legislature did not specifically tax legal sales by name, it was their intent to tax only illegal sales. In so construing the Sales and Use Tax Act, we are not unmindful that statutes are not always construed according to the letter, and general expressions may sometimes be restrained so as to make the statute bear reasonable construction (*Forsyth v. Marbury*, R. M. Charl. 324, 334), and that in construing statutes a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers (*Cook v. King*, T. U. P. Charl. 265), and that courts must regard substance and not adhere too closely to the letter (*Moody v. Threlkeld*, 13 Ga. 55 (7)), and that, when to follow the literal sense of words of the statute leads to absurdity, this constitutes sufficient authority to depart from them (*Gillis v. Gillis*, 96 Ga. 1, 9, 23 SE 107, 30 LRA 143, 51 ASR 121), and that general terms in a statute providing for collection of taxes are not allowed their full literal import, if the effect is to require that to be done which the law does not authorize. They merely do not apply here. What applies here is the rule that where a statute is plain and susceptible of only one construction the court has no authority to place a different construction on it but must apply it according to its terms. *State Revenue Commission v. Brandon*, 184 Ga. 225, 228 (190 SE 660); *Thomas v. Lumbermen's Mut. Cas. Co.*, 57 Ga. App. 434, 436 (195 SE 894).

Let us now determine whether there are any reasons, other than the plain language of the statute, which might show the manifest intention of the legislative body to be different from the literal sense of the terms of the statute. It is contended that to tax the illegal sale is equivalent to licensing an illegal activity and that we should not so construe the Act as to give such an intent to the legislature in the absence of clear express words to the contrary. While this argument might have some

force as to those sales made prior to the effective date of the Act of 1960 (Ga. L. 1960, p. 153), the preamble of which states that it is "An Act to amend an Act entitled 'The Georgia Retailers' and Consumers' Sales and Use Tax Act,' approved February 20, 1951 (Ga. L. 1951, p. 360), as amended, so as to remove ambiguities which have become apparent with respect to upon whom the tax is levied and imposed, and to clarify the Act so as to make it clear that the legal imposition of the tax is upon the purchaser and thereby express the original intent of the General Assembly" and re-enacts a new Section 2 of the Sales and Use Tax Act eliminating therefrom the language describing the tax as "A privilege or license tax" upon the seller, such arguments have no application to any sales made subsequent to March 1, 1960.

Does the fact that prior to the Act of 1960 the Sales and Use Tax Act was in the nature of a license and occupation tax (*Williams v. General Finance Corp.*, 98 Ga. App. 31, 34 (1a), 104 SE2d 649; *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616 (1a), supra) make applicable to the present case the ruling in *Miller & Co. v. Shropshire*, 124 Ga. 829 (53 SE 335, 4 AC 574) and *Wright v. Mayor &c. of Macon*, 5 Ga. App. 750 (64 SE 807), so as to give validity to the argument that the legislature did not intend to repeal the laws making the operation of a gambling device illegal and therefore did not intend to tax illegal sales? In *Miller & Co. v. Shropshire*, 124 Ga. 829, supra, the tax levied was upon a specific operation or business, that is, a "bucket shop," which, under other enactments of the legislature, was an illegal gambling operation, and it was said in that case "that where the pursuit of a particular calling, such as maintaining a gaming house, has been prohibited by criminal statute, yet, if the legislature subsequently imposes a license tax upon that occupation, those who engage in it after paying the required tax are exempt from prosecution and punishment for a penal offense." In the present case (as to sales occurring prior to March 1, 1960), we have no such specific license tax on an illegal business; on the contrary, we have here a general license tax, in addition to other taxes, on the privilege of doing business, measured by sales, and the fact that a person otherwise duly licensed to do business

may engage in making illegal sales does not exempt such person from the tax required by the Act. In *Wright v. Mayor &c. of Macon*, 5 Ga. App. 750, supra, the General Assembly had expressed and established the general policy of the State with reference to the existence of "locker clubs" which authorized the assembling of liquors in a bona fide private club, and the court held that a municipal ordinance cannot control such matter where the tax imposed by the State on such locker club has been paid. Here again we have a tax on a specific activity, which prior to the tax Act was illegal. In this case, Judge Powell concurred specially because of what he considered the binding precedent of *Miller & Co. v. Shropshire*, 124 Ga. 829, supra. We think his special concurrence is appropriate to the present case. "I have always thought that the better view was expressed by Judge Cooley in Youngblood v. Sexton, 32 Mich. 406 (20 AR 664). I quote his language: 'The idea that the State lends its countenance to any particular traffic by taxing it seems to us to rest upon a very transparent fallacy. It certainly overlooks or disregards some ideas that always must underlie taxation. Taxes are not favors; they are burdens; they are necessary, it is true, to the existence of the government, but they are not the less burdens, and are only submitted to because of the necessity. It is deemed advisable to make careful provision to preclude these burdens becoming needlessly oppressive; but it is conceded by all the authorities, that under some circumstances they may be carried to an extent that will be ruinous to individuals. It would be a remarkable proposition, under such circumstances, that a thing is sanctioned and countenanced by the government when this burden, which may prove disastrous, is imposed upon it, while, on the other hand, it is frowned upon and condemned when the burden is withheld. It is safe to predict that if such were the legal doctrine, any citizen would prefer to be visited with the untaxed frowns of government rather than with those testimonials of approval which are represented by the demands of the tax-gatherer. It may be supposed that some idea of special protection is involved when a business is taxed; taxation and protection being reciprocal. If the tax upon any *particular thing* was the consideration for the protection given to the owner

in respect to it, this might be so; but the maxim of reciprocity in taxation has no such meaning.' "

The special concurrence, in what we consider to be an erroneous interpretation of the statute, attempts to exclude illegal sales by a construction of an "inclusion" clause of the Act which expressly states that the "inclusion" clause does not limit the general terms of the Act as to what type of sales are taxed, and in so doing, the minority opinion assumes that all the classifications in the "inclusion" clause apply only to legal sales and then applies the ejusdem generis rule to arrive at the conclusion that the phrase, "other such coin-operated amusement devices," applies only to the legal sales. This, in our opinion, is begging the question. Such argument assumes an answer (that the inclusion clause applies only to legal sales) and then uses this answer as a major premise to prove (by application of the ejusdem generis rule) the answer assumed in the first instance. The major fallacy in such reasoning is reaching a conclusion that an "inclusion" clause is one of limitation, when such clause expressly states it is not one of limitation.

That the term, "other such coin-operated amusement devices," does not refer to musical devices (although the body of the Act might be ambiguous) becomes apparent upon reading the preamble of the Act of 1953 amending the section of the Sales and Use Tax Act which recites that the Act is to make clear "the intent of the General Assembly in regard to the operation of coin-operated musical devices, coin-operated amusement devices and charges made for participation in games and amusement activities."

Even if the statute should be construed as contended in the special concurrence, it does not necessarily follow that the assessments are void for lack of jurisdiction on the part of the Commissioner to issue the assessment; nor would such partial illegality of the assessment in one of the cases void the remainder assessed for sales which were not illegal. It seems, therefore, that the question decided in Division 1 of the opinion must of necessity be decided in either event.

It follows that, for the reasons given, the trial court did not err in granting the summary judgment in favor of the taxpayer.

*Judgment affirmed. Nichols, P. J., and Frankum, J., concur. Felton, C. J., concurs specially, as do Bell, P. J., Jordan, Hall, Eberhardt and Russell, JJ.*

FELTON, Chief Judge, concurring specially. The affidavits supporting the plaintiff in error's motions for summary judgments show that one of the assessed items in one (VFW) case and the sole item in the other (American Legion) case was receipts from the operation of coin-operated gaming devices known as "slot machines," or "one-armed bandits."

*Code Ann.* § 92-3403a C(1) lists a number of specific transactions which the terms "retail sale" or a "sale at retail" include, but to which they are not limited, for the purpose of the Act. The plaintiff in error contends that the operation of these "slot machines" is a transaction which constitutes a "retail sale" or a "sale at retail," hence making the receipts therefrom taxable, within the provision of subsection (c) of the above section; to wit: "Sales of tickets, fees or charges made for admission to or voluntary contributions made to places of amusement, sports, or entertainment, including billiard and pool rooms, bowling alleys, amusement devices, musical devices, theatres, opera houses, moving picture shows, vaudeville, amusement parks, athletic contests, including wrestling matches, prize fights, boxing and wrestling exhibitions, football and baseball games, skating rinks, race tracks, public bathing places, public dance halls or any other place at which any exhibition, display, amusement or entertainment is offered to the public or place or places where an admission fee is charged, together with charges made for the operation of coin-operated musical devices and *other such coin-operated amusement devices and charges made for participation in games and amusement activities.*" (Emphasis supplied.)

Although the above section is written with language which might appear to be sufficiently broad and general to include, by the application of the ejusdem generis rule, the operation of "slot machines," there are other considerations involved besides the words in which the statute is couched. "General terms and expressions in the constitution, or in the statute providing for the collection of taxes, are never allowed their full literal import if the effect of such construction is to require that to be

done which the law does not authorize, or to violate a fundamental principle upon which the government is founded and operated." *Penick v. Foster,* 129 Ga. 217 (6) (58 SE 773, 12 LRA (NS) 1159, 12 AC 346). "It is a familiar rule of construction, where a statute is susceptible of two interpretations, that it should be construed in harmony with the general policy of the law, rather than against it." *Singleton v. Close,* 130 Ga. 716, 720 (61 SE 722). In all interpretations, the courts must look diligently for the intention of the legislature. *Code Ann.* § 102-102 (9) and cases annotated thereunder. "While . . . statutes in pari materia may not be resorted to where the language of the statute under consideration is clear, it is equally as well settled that, where the terms of the statute to be construed are ambiguous or its significance is of a doubtful character, it becomes necessary to give proper consideration to other related statutes in order to ascertain the legislative intent in reference to the whole system of laws of which the doubtful statute is a part." *Ryan v. Commissioners of Chatham County,* 203 Ga. 730, 732 (48 SE2d 86). The mere keeping of a slot machine constitutes a violation of our criminal law. *Code* § 26-6502; *Miller v. State,* 94 Ga. App. 259, 262 (2) (94 SE2d 120), and citations.

Keeping the foregoing principles of statutory construction in mind, what was the legislative intent regarding the taxability of the proceeds from illegal activities, specifically "slot machines," under the State's Sales and Use Tax Act? Although the statute provides that the enumerated transactions are not inclusive of all those encompassed by the Act, an examination of the whole list reveals that all of the specified transactions are of a legal or lawful nature. Applying the restrictive rule of ejusdem generis, therefore, the general words, "other such coin-operated amusement devices, etc.," are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words, i.e., those of a *legal* or *lawful* nature. Aside from this technical, though valid, verbal analysis method of determining the legislative intent, however, it can be shown that the construction urged by the plaintiff in error is inconsistent with public policy and our whole system of law.

As has already been stated, the maintaining of "slot machines" is a criminal offense in this State. The Georgia Supreme Court has held that where a particular activity (in that particular case a "bucket shop," or gaming-house) has been prohibited by a criminal statute, yet if the legislature subsequently imposes a license tax upon that activity, those who engage in it after paying the required tax are exempt from prosecution and punishment for a penal offense. *Miller & Co. v. Shropshire,* 124 Ga. 829, 831 (53 SE 335, 4 AC 574). We recognize the distinction between a license tax, which is a prerequisite for carrying on a business, and a tax purely for revenue purposes. While it is true that sales tax enactments are considered primarily revenue measures, 47 Am. Jur. 216, Sales and Use Taxes, § 14, this court has held that they are also in the nature of *license* and occupation or excise taxes. *Williams v. General Finance Corp.,* 98 Ga. App. 31, 34 (1a) (104 SE2d 649). The term "license tax" is sufficiently broad to include both a charge imposed under the police power for the privilege of obtaining a license to conduct a particular business, and a tax imposed upon a business for the sole purpose of raising revenue, every "license tax" being imposed for one purpose or the other, or both. *City of Waycross v. Bell,* 169 Ga. 57 (149 SE 641). The term "license tax" may be defined as a sum exacted for the privilege of carrying on a particular occupation. *City of Waycross v. Bell,* p. 62, supra. Thus, the Sales and Use Tax Act, though primarily a revenue measure, was a license tax measure in the sense that it recognized the legality of the class of transactions, some of which were specifically named, and thereby sanctioned their continued operation. Under the authority of the *Miller* case, supra, the inclusion as a taxable transaction of the illegal activity of maintaining "slot machines" would impliedly repeal the statute making the activity a criminal offense. Such an intention can not, under the circumstances, be imputed to the General Assembly. Repeals by implication are not favored by the law. *Central of Ga. R. Co. v. Leonard,* 49 Ga. App. 689, 698 (176 SE 137), and cit. Such a construction would cast the legislature in the indefensible role in which, on the one hand, it declares an activity to be illegal, hence against the public

policy of the State and not to be condoned, while, on the other hand, it takes cognizance of the illegal activity and attempts to exact revenue for the privilege of carrying on that activity with impunity in the face of an existing and valid, yet unenforced, statute.

It is contended that the taxability of profits from illegal activities under our Sales and Use Tax is supported by the policy of the Federal Government, upheld by numerous court decisions, of taxing, under the income tax statutes, gains or profits from such illegal activities as traffic in illicit liquor, race track bookmaking, card playing, unlawful insurance policies, making of illegal prize fight pictures, lotteries, graft, extortion, fraud, embezzlement, prostitution and the misapplication by an attorney of his client's money. See Mertens, Law of Federal Income Taxation, §§ 4.11, 6A13, and cases cited therein. This policy is neither applicable nor binding in the case of a sales and use tax, such as is now under consideration, because of (1) the difference in the constitutional and statutory authorities for the two forms of taxes, and (2) the distinction between the natures of the two taxes. The 16th Amendment to the United States Constitution provides: "The Congress shall have power to lay and collect taxes on income, *from whatever source derived,* without apportionment among the several States, and without regard to any census or enumeration." (Emphasis supplied.) Justice Holmes, in U.S. v. Sullivan, 274 U.S. 259 (47 SC 607, 71 LE 1037), a case frequently cited in subsequent similar cases, pointed out that the Internal Revenue Act, § 213(a), which implemented the 16th Amendment, defines gross income as "gains, profits, and income derived from . . . the transaction of any business carried on for gain or profit, or gains or profit and income derived *from any source whatever.*" It was noted in Rutkin v. U.S., 343 U.S. 130 (72 SC 571, 96 LE 833), that § 11 B of the Income Tax Act of 1913 had specified *"lawful"* business, but that in 1916 this was amended by omitting the one word "lawful," with the obvious intent thereafter to tax unlawful as well as lawful income, i.e., "from whatever source derived," as provided by the 16th Amendment. The Supreme Court has upheld the power of Congress to exercise its taxing

power to restrict or suppress an illegal activity, with the revenue purpose of the tax being secondary. United States v. Sanchez, 340 U.S. 42 (71 SC 108, 95 LE 47). In that case, however, the taxes were allowed under the Marihuana Tax Act, 26 USCA § 2590 (a) (2), the purpose of which, in addition to the raising of revenue, was to "render extremely difficult the acquisition of marihuana by persons who desire it for illicit uses." S. Rep. No. 900, 75th Cong. 1st Sess. p. 3. To the same effect, see HR Rep. No. 792, 75th Cong. 1st Sess. p. 2. Of course, the Federal Government is one of limited powers—limited to only those powers given it by the Federal Constitution, whereas the State Governments have the sovereignty (or whatever is left of it) to exercise such powers as are not granted to the Federal Government. These powers include the power of taxation and since the Federal Government has not preempted the taxing of illegal activities, there is no reason why the States should be unable to do so. Art. VII, Sec. I, Par. I of the Georgia Constitution of 1945 provides that the right of taxation is a sovereign right belonging to the people, and that the General Assembly shall not have the authority to irrevocably limit this right. Although we are holding that the construction in pari materia of the statute making slot machines illegal and the statute levying a sales and use tax on a certain class of transactions results in a limitation of the incidence of the taxing, this does not mean that this is an irrevocable limitation, or that the General Assembly could not extend the taxing power to illegal activities. In other words, we are not ruling on the constitutionality of the tax statute nor denying that the legislature *could* tax illegal transactions if it saw fit, but are merely holding that the legislature had no such intention in its passage of this Act.

The other difference between the income tax and the sales and use tax lies in the nature of the two taxes. The incidence of the income tax is solely upon income already realized, hence it is retroactive in its operation. The income tax law does not necessarily approve or condone the activity which has produced the gain or profit, but says, in effect, that merely because the business is unlawful is no reason to exempt it from carrying its share of the burden by paying the taxes that if lawful it would

have to pay, as was expressed by Mr. Justice Holmes in U.S. v. Sullivan, 274 U.S. 259, supra. The incidence of the sales and use tax, on the other hand, is upon a more limited and delineated class of transactions, and is more prospective in its operation. In other words, rather than providing merely for taxation of transactions which may have been "one shot operations" and may be terminated at the time they are reported, the sales and use tax contemplates taxation of a "going concern"—a continuing operation which has been defined as specifically as is possible in a statute without enumerating every conceivable transaction covered. To construe this Act so as to include illegal activities would give the State a financial interest in perpetuating a criminal activity by taking the relatively small (3%) proportion of the taxpayer's illegally obtained profits in exchange for not only permitting the continued operation of the illicit activity but also encouraging it by allowing the taxpayer to retain the lion's share (97%) of the proceeds. It seems apparent that such a policy would quickly undermine the effectiveness of and respect for our criminal statutes. The fact that the operation of bingo and other gambling devices has not been allowed by the legislature in this State, even for the benefit of churches and other charitable organizations, is a good indication that it is against our public policy. It is to be deplored that such laws are not as well enforced as criminal statutes ought to be due to such a lack of public support that the very tenure of the jobs of the enforcing officers is oftentimes jeopardized by their attempts at enforcement. Nevertheless, we do not think that the General Assembly was so inconsistent as to define the public policy then proceed to fill the public coffers with the illicit proceeds of the activity declared to be contrary to public policy. It follows that the Revenue Commissioner stepped beyond his authority in assessing this tax as much as he would have if he assessed a sales tax on a real estate sale.

If the Sales and Use Tax Act or any other law required the agents of the Revenue Department to confiscate gambling machines immediately upon discovery, so as to show an intent *not to authorize a collection of taxes on future income from gambling machines,* we would have some basis for a contrary ruling in

this case. But there is no such requirement for confiscation, and the State is now collecting sales tax from the machines operated by the taxpayers in this case as is admitted by all parties.

It follows from the above that the court did not err in granting the summary judgments in favor of defendant in error American Legion Post 69, the assessment against which was based solely on the proceeds from "slot machines," and in favor of defendant in error Veterans of Foreign Wars Post 4625, the non-itemized assessment against which was comprised partially of proceeds from "slot machines," a non-taxable transaction, and partially of proceeds from the sale of foods, a taxable transaction, in which the assessment showed one lump sum and did not separate the amount of the legal assessment from the illegal.

It is possible that my views should be classified as a dissent in view of the lack of jurisdiction on the part of the Commissioner but the result is the same.

EBERHARDT, Judge. We are in full accord with Headnote 1 and Division 1 of the opinion, which is determinative of the issues before us. Since the assessments in question were invalid for the reason stated, the matter of the jurisdiction of the Revenue Commissioner to make the original assessments, which have been canceled or abated, is not before us. What is said, therefore, in Headnote 2 and Division 2 of the opinion, as well as what is said in the special concurring opinion of Chief Judge Felton is obiter.

I am authorized to say that Presiding Judge Bell, and Judges Jordan, Hall and Russell concur in this statement.