QUESTION: May a city legally issue an occupational license under the applicable general "coverall" provisions of the city ordinance to an applicant who wishes to operate a "school for casino dealers," in which school students are taught to deal such games as roulette, blackjack, craps, and hazard?
SUMMARY: While no law specifically prohibits a municipality from issuing an occupational license under applicable general "coverall" provisions of a city ordinance to an applicant who wishes to operate a school for casino dealers, the receipt of such license by the school would not necessarily immunize those in possession of gambling implements prohibited by s. 849.231, F. S., from criminal prosecution for possession or use of the same. I note from your letter that you cite s. 849.231, F. S., which narrowly proscribes the possession of any "roulette wheel or table, faro layout, crap table or layout, chemin de fer table or layout, chuck-a-luck wheel, bird cage such as used for gambling, bolita balls, chips with house markings, or any other device, implement, apparatus, or paraphernalia ordinarily or commonly used or designed to be used in the operation of gambling houses or establishments, excepting ordinary dice and playing cards." Your letter advises that the tentative applicant has been informed by the United States Department of Justice that he will be permitted to register pursuant to 15 U.S.C. § 1171 et seq. The provisions of s. 849.231, F. S., make an exception for any person who has such federal authorization provided that the prohibited instruments are not displayed to the general public, sold for use in Florida, or held or manufactured in contravention of the requirements of 15 U.S.C. § 1171 et seq. The extent to which s.849.231, F. S., is applicable to a casino dealer-school operator depends on an interpretation of the word "use" as employed in the statutory phrase "sold for use." If the described implements are exempt from the provisions of s. 849.231, then their use in a school where no actual gambling takes place (see s. 849.08, F. S., which defines gambling as a game of cards, keno, roulette, faro, or other game of chance for money or value) would not violate the terms of s. 849.231. However, if "use" is defined in its ordinary sense as any employment of the described instruments, see Black's Law Dictionary, 4th Ed., then use of the instruments in Florida in any capacity is unlawful. There is widespread confusion regarding statutes which render unlawful the possession of gambling devices. The problem is whether or not possession of the gambling devices alone is an offense or whether a showing must also be made that the devices were used or intended to be used for gambling or gaming purposes. See Annotation 162 A.L.R. 1188 and cases cited therein. Generally, although not always, judicial resolution of the issue has been based on the language of the particular statute involved. Such has been the general trend in Florida. In the early case of Kirk v. Morrison,146 So. 215 (Fla. 1933), the Florida Supreme Court held that a statute which prohibited the possession of gaming implements or apparatus for the purpose of gaming or gambling could not be applied to the owner of a slot machine which was used only to sell mints and for "amusement purposes." The court held that a conviction under the statute was proper only if the instrument itself was constructed or designed for gambling, or, though not so constructed or designed, the instrument was permitted to be used or kept for use for gaming or gambling. Kirk, supra, at 216, 217. See also Ashcroft v. Healey, 23 F.2d 189 (5th Cir. 1927), wherein the court stated that merely because a slot machine (used as a vending machine) was susceptible to use for gambling, this fact alone did not render its possession unlawful under a statute prohibiting use of slot machines as gambling devices. In Cooper v. City of Miami, 36 So.2d 195 (Fla. 1948), the court considered a violation of a city ordinance which made it an offense to unlawfully set up and keep a gambling device. The court stated that the term gambling device "includes only such instruments as are intended for the purpose of gaming, or such as are used to determine the result of the contest on which the wager is laid." Cooper, supra, at 196. The aforecited cases dealt with statutes or ordinances which did not describe or name the prohibited instruments but only proscribed possession of "gambling devices" or instruments used for the purpose of gambling. In interpreting such statutes, the court used a twostep analysis: If the particular instrument was constructed, designed, or intended to be used for gambling, possession of such instrument could properly be made unlawful; if the instrument was not so constructed, then, before a conviction could be had, a showing of actual or intended use for gambling was required. When the proscribed instruments are actually named and described in a statute, the Florida courts have sustained pertinent statutory provisions which prohibited, inter alia, their use or possession. Weathers v. Williams, 183 So. 764
(Fla. 1938); Eccles v. Stone, 183 So. 628 (Fla. 1938); Pasternak v. Bennett, 190 So. 56 (Fla. 1939). In Pasternak, supra, the court upheld a statute which prohibited possession of slot machines or similar devices operated by coin. The court quoted with approval from the case of Bobel v. People, 173 Ill. 19, 50 N.E. 322, 64 Am. St. Rep. 64: And we are of the opinion that it was the purpose of the legislature in enacting this statute, not only to suppress the use of these gambling devices, or the keeping of them for gambling purposes, but also to prohibit the ownership, or the keeping of them, whether for gambling purposes or not; otherwise why make it a criminal offense to own or keep them, without qualification as to the purpose of such ownership or keeping and why provide for their seizure and destruction? . . . We think it is clear that for the purpose of preventing the use of a device for gambling, the legislature may prohibit its possession or ownership, when it is designed for that purpose. The statute does not make its intended use for gambling a prerequisite. In sum, therefore, the Legislature, in prohibiting possession of the implements described in s. 849.231, F. S., as well as "any other device, implement, apparatus or paraphernalia ordinarily or commonly used or designated to be used in the operation of gambling . . . excepting ordinary dice and playing cards," did not intend to make actual or intended use of such instruments for gambling a necessary part of the offense. It is clear that the possession of devices themselves, which are by definition designed for gambling, is unlawful. Therefore, I am of the opinion that the word "use" in the context of the phrase "sold for use" should be given its ordinary meaning. Hence, the use of the proscribed instruments in a school for casino dealers is unlawful even though no actual gambling takes place and the applicant has registered pursuant to the Federal Gambling Devices Act, 15 U.S.C. § 1171 et seq. In light of the foregoing, it is my opinion that, while no law prohibits the issuance of an occupational license tax to a school for casino dealers, the receipt of such license by the school would not necessarily immunize those in possession of gambling devices proscribed by s. 849.231, supra, from prosecution for possession or use of same. United States v. Calamaro, 354 U.S. 351
(1957); State v. Wassick, 191 S.E.2d 283 (West Va. 1972); State v. Wood, 187 So.2d 820 (Miss. 1966); State v. Pinball Machines,404 P.2d 923 (Alaska 1965); Owensboro v. Smith, 383 S.W.2d 902 (Ky. 1964); Undercofler v. V.F.W. Post #4625, 139 S.E.2d 776 (Ct.App. Ga. 1964); Annot. — Taxing Unlawful Activities, 118 A.L.R. 827.