187 So.2d 820 (1966)
STATE of Mississippi
v.
Charles WOOD.
No. 44195.
Supreme Court of Mississippi.
June 13, 1966.
*821 Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Paul Alexander, Robert G. Nichols, Jr., W.E. Gore, Jr., John R. Countiss, III, Jackson, for appellant.
Wise, Smith & Carter, M. Curtiss McKee, Robert C. Travis, Julian P. Alexander, Jr., Jackson, for appellee.
BRADY, Justice.
This is an appeal by the State of Mississippi from a judgment of the First Circuit Court District of Hinds County, which affirmed a judgment of the County Court of Hinds County sustaining a motion to quash the affidavit and a demurrer to the affidavit charging the appellee with the possession of intoxicating liquors in violation of Mississippi Code Annotated section 2613 (1956). Under the constitutional question of due process, voluminous testimony was taken in support of the *822 motion to quash and, by agreement, in support of the demurrer. The pertinent facts which were brought out under the motion to quash are tersely as follows:
The record discloses that on April 4, 1966, a search warrant was issued by County Judge Charles T. Barber, based upon an affidavit made by Deputy Sheriff Thomas B. Shelton, and a search was made of the premises of the Country Club of Jackson in order to determine whether or not intoxicating beverages were being kept on the premises in violation of section 2613. Proper service of the search warrant was made upon Charles Wood, appellee, Manager of the Country Club of Jackson, and a quantity of intoxicating liquors was found in the Club. Appellee was placed under arrest and the intoxicating liquors were confiscated. An inventory of the same was made and placed upon the back of the search warrant where the return was made and signed by Deputy Sheriff Shelton.
When the cause came on for hearing, the appellee filed a motion to quash and a demurrer to the affidavit which were heard ante litem and which were sustained by the Judge of the County Court. From this action, the State of Mississippi appealed with supersedeas to the Second Circuit Court District of Hinds County, where on May 3, 1966, Circuit Judge Russell D. Moore handed down an opinion and entered an order sustaining the action of the County Court. It is from the order of the Circuit Court that this appeal is prosecuted.
The basic grounds upon which appellant, State of Mississippi, urges reversal of the order of the circuit court are that both the county court and the circuit court erred in sustaining the motion to quash and the demurrer to the affidavit filed against appellee and committed error in holding that section 2613 had been repealed by implication; that the appellee was denied due process of law; and that the lower courts erred in holding that the appellee was a proper person who could complain of discriminatory application of the prohibition laws of the State of Mississippi, if such discrimination actually exists.
The errors are stated by appellant as follows:
1. The Appellate Court, the Circuit Court of Hinds County, Mississippi, erred in affirming the judgment of the County Court of Hinds County, sustaining a motion to quash and a demurrer to the affidavit filed against Appellee.
2. The Trial Court erred in adjudicating that Section 2613 of the Mississippi Code of 1942 has been repealed by implication, and the Appellate Court erred in affirming this adjudication.
3. The Trial Court erred in adjudicating that the prohibition laws of this state are being unconstitutionally applied by the representatives of the State of Mississippi, and, therefore, the Appellee was denied due process of law and the Appellate Court erred in affirming this judgment.
4. The Appellee has no standing before this Court and had no standing before the Trial Court or the Lower Appellate Court to challenge the validity, constitutionality or discrimination in the application of the prohibition laws of the State of Mississippi, since he has not shown that he is a person affected by the prohibition laws of the State of Mississippi.
Considering first the fourth error which is urged by appellant, we do not feel that this assignment is well taken for the reason that it has long been an established rule of law that it is not necessary for a person to wait until he has actually been fined or committed to jail before he can exercise his rights to contest the constitutionality of discrimination which he alleges is being practiced against him. The rule is succinctly stated in Cramp v. Board of Public Instruction, 368 U.S. 278, 283, 82 *823 S.Ct. 275, 278, 7 L.Ed.2d 285 (1961), by the Supreme Court of the United States as follows:
The controlling question is whether [or not] the appellant "has sustained or is immediately in danger of sustaining some direct injury as the result of [the statute's] enforcement * * *." Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078.
It is to be noted that the proof shows that the appellee was actually arrested and that his arrest was predicated upon an affidavit charging a violation of the crime of the possession of liquor, section 2613. First conviction under this statute carries a fine of not less than $100 or more than $500, or not less than one week or more than three months in the county jail. Under our interpretation of the rule, the appellee is not required or expected to wait until convicted before he can raise the question of whether the statute upon which he is to be tried and upon which he has actually been arrested is constitutional. One who faces the certainty that his fine must be not less than $100 or that he must be imprisoned in jail for not less than one week, if convicted, is certainly in imminent danger of sustaining a direct injury from the enforcement of the statute. Therefore, there is no merit in this error assigned by appellant.
We next consider appellant's assignment that section 2613 has been impliedly repealed. A detailed and minute analysis of the prohibition laws and tax statutes of the State of Mississippi from 1848 down to the present time is outlined in the brief of appellee, which is interesting but does not have any direct bearing on his contention that there is now a repugnancy or irreconcilable conflict which exists between the prohibition statutes of this state and the laws taxing the sale of intoxicating liquors.
In order to dispose of this assignment of error, it is essential that we consider the objections thereto advanced by the appellee, which are (1) that the statutes are repugnant and cannot together have their appropriate application, or (2) that if no repugnancy exists, the latter enactments (tax) cover the whole subject matter and plainly show that it was intended by the legislature not only as a substitute for the earlier act, but to cover the subject and to prescribe the only rules with respect thereto.
Intrinsically it is obvious that the states and the federal government have the constitutional right and power as separate sovereigns to tax that which the sovereignty has declared to be illegal. Appellee in his brief concedes that the State of Mississippi has the right to impose a tax upon an illegal activity, and the appellant amply establishes this fact by proof that the United States Government has for a long period of time exercised its power to tax that which is forbidden or which is a violation of the law. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955); United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953); United States v. Stafoff, 260 U.S. 477, 43 S.Ct. 197, 67 L.Ed. 358 (1923); United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043 (1921).
The gravamen of appellee's contention is that because of irreconcilable conflicts, or because of the repugnancy existing between section 2613 and the pertinent tax statutes, particularly Mississippi Code Annotated sections 10112, 10115, 10147-03(b), and 10147-10 (1964), section 2613 by implication has been repealed. Section 10112 reads as follows:

Upon every person engaging or continuing within this State in the business of selling tangible personal property, the sales of which are prohibited by the laws of this State, there is hereby levied, assessed and shall be collected a tax equal to nine per cent (9%) of the gross proceeds of the retail sales of the business. All sales by wholesalers to other *824 wholesalers or retailers licensed under this act shall be taxed at the rate of six per cent (6%) which shall be payable in accordance with the provisions of Section 6 [§ 10118] relating to such sales. A retailer or wholesaler in computing the tax on sales may take credit for the amount of the six per cent (6%) tax paid to a wholesaler located in this State and remit the difference to the Commissioner, provided adequate records and all invoices are maintained to substantiate the credit claimed. (Emphasis added.)
Section 10115 of the Code provides:
Any person who engages, or who intends to engage, in any business or activity which will subject such person to be privilege tax imposed by this act, shall apply to the commissioner for a permit to engage in and to conduct any business or activity upon the condition that he shall pay the tax accruing to the State of Mississippi under the provisions of this act; and shall keep adequate records of such business or activity as required by this act. Upon receipt of such permit, the applicant shall be duly licensed under this act to engage in and conduct such business or activity. Said permit shall continue in force so long as the person to whom it is issued shall continue in the same business at the same location, unless revoked by the commissioner for cause.
The commissioner shall require of every person desiring to engage in business within this state, who maintains no permanent place of business within this state, a cash bond or an approved surety bond in an amount sufficient to cover twice the estimated tax liability for a period of three (3) months. Provided, however, that the bond shall in no case be less than one hundred dollars ($100.00) and that the tax may be prepaid in lieu of filing bond if the amount is approved by the commissioner. This bond shall be filed with the commissioner prior to the issuance of a permit to do business and before any such person may engage in business within this state. Failure to comply with the provision will subject such person to the penalties provided by this act.
The commissioner is hereby authorized to revoke the permit of any person failing to comply with any of the provisions of this act, after giving to the person holding such permit ten (10) days' notice of the intention of the commissioner to revoke such license. Unless good cause be shown within said ten (10) days why such permit should not be revoked, the commissioner may revoke such permit, and revocation of such permit, or engaging or continuing in business after such permit is revoked, shall subject such person to all the penalties imposed by this act.
Any person liable for the tax who fails to obtain a permit from the commissioner or who continues in business after such permit has been revoked, or who fails to make his returns for taxation as provided, or who fails to keep adequate records and invoices provided by this act, or who fails or refuses to permit inspection of such records, or who fails to pay any taxes due hereunder, shall forfeit his rights to do business in this state until he complies with all the provisions of this act and until he enters into a bond, with sureties, to be approved by the commissioner, in an amount not to exceed twice the amount of all taxes estimated to become due under this act by said person for any three (3) month period, conditioned to comply with the provisions of this act, and pay all taxes legally due by him.
If any person is engaged in or continuing in this state in any business or activity without obtaining a permit, or after such permit has been revoked, or without filing a required bond, or without keeping and allowing inspection of all records required by this act, or without making a return, or returns, and without paying all taxes due by him hereunder, *825 it shall be the duty of the commissioner to proceed by injunction to prevent the continuance of said business. Any temporary injunction enjoining the continuance of such business shall be granted without notice by a judge or chancellor now authorized to grant injunctions.
The appellee basically contends that these two statutes, by the use of the word "licensed," clearly indicate an intent on the part of the legislature to grant unto any person selling any tangible property, including intoxicating liquors, the right to do so, and therefore these two sections are completely irreconcilable with section 2613 of the Code, which reads as follows:
If any person shall sell or barter, or give away or keep or have in his possession, except as hereinafter authorized, any vinous, alcoholic, malt, intoxicating or spiritous liquor, or intoxicating bitters or drinks, which if drunk to excess will produce intoxication, such person, and all others who may have owned or had any interest at the time in the liquors, bitters or drinks sold or bartered, or kept or in possession contrary to law, shall on conviction, be punished as follows:
(a) By a fine of not less than one hundred dollars, nor more than five hundred dollars, or by imprisonment in the county jail not less than one week nor more than three months, or both, for the first conviction under this section.
(b) By a fine of not less than one hundred dollars and by imprisonment in the county jail not less than sixty days, nor more than six months, for the second conviction for violating this section.
(c) By imprisonment in the state penitentiary not less than one year nor more than five years for conviction the third time under this section for the violation thereof after having been twice convicted of its violation.
Appellee urges that since section 10115 does not make any distinction between persons engaged in legal and illegal activities, and that since liquor dealers hold permits pursuant to this section, the State apparently recognizes, approves and ratifies the liquor business. As previously stated, appellee concedes that the State may collect the tax on sales which are unlawful as well as on those which are lawful. However, he contends that the language of the tax statutes, together with the detailed minute operations engaged in by the State Tax Commission in the collection of the tax, the granting of permits, and the revoking of permits for failure to pay the tax or for other infractions of tax regulations committed by those persons engaged in making illegal sales, presents an irreconcilable conflict.
It is contended by the appellee that all of the activities of the State Tax Commission necessary and incidental to the collection of the tax on illegal intoxicating liquors are proof of a de facto existence of a legalized liquor business in this State, by this State, and that out of this chaos the de facto repeal of the prohibition law should be recognized by this Court. Appellee urges that since the taxing provisions were enacted subsequent to the prohibition law, section 2613 must fail.
We are forced to differ with appellee's contention that section 2613 and the pertinent tax sections are repugnant. While the basic moral ideals may be at odds, these statutes have operated and can operate together without repugnancy. We hold that the regulation under the tax statutes merely provides a more effective and lucrative method for collecting the taxes and that the statutes are not repugnant.
Appellee urges many and sundry reasons in support of his contention in the second part of this assignment that section 2613 has been repealed by implication because if no repugnancy exists the latter enactments were intended to cover the whole subject matter. However, we fail to find any merit in this contention. The able and candid *826 brief of the appellee recognizes the importance of legislative intent. He cites 82 C.J.S. Statutes § 286 (1953), which reads in part as follows:
A statute, or a provision thereof, may be repealed by implication. * * * Whether it has been so repealed is a question of legislative intent.
We note the following statement in the case of Board of Education of Benton County v. State Educational Finance Commission, 243 Miss. 782, 795-96, 138 So.2d 912, 917 (1962):
It is the duty of this Court to follow the intention of the Legislature in determining whether it repealed one law by enacting another. The textwriters have pointed out this duty, by the language found in 50 Am.Jur., Statutes, Sec. 535, p. 541, as follows: "* * * one statute will not be held to repeal another by implication unless it appears, from the terms and provisions of the latter act, that it was the intention of the legislature to enact a new law in the place of the old." It is also pointed out in the same text in Sec. 538, p. 543, that: "Repeals by implication are not favored, and there are many instances in which particular statutes are held not to be repealed by implication. As a general rule, the legislature, when it intends to repeal a statute may be expected to do so in express terms or by the use of words which are equivalent to an express repeal, and an intent to repeal by implication, to be effective, must appear clearly, manifestly, and with cogent force. * * * The courts will not hold to a repeal if they can find reasonable ground to hold to the contrary; * * * See Pons v. State, 49 Miss. 1; Ex Parte McInnis, 98 Miss. 773, 54 So. 260; Seward v. Dogan, 198 Miss. 419, 21 So.2d 292; In re Savannah Special Consolidated School District of Pearl River County, 208 Miss. 460, 44 So.2d 545; United States Fidelity and Guaranty Company v. Higdon, Adm'r, 235 Miss. 385, 109 So.2d 329; Branton v. O.B. Crittenden & Co., 145 Miss. 531, 111 So. 150."
These authorities unequivocally show that repeal of statutes by implication is not favored, and where there can be an interpretation which is not violative of the intent and meaning of the preexisting statute, that is the construction which is placed upon it so as not to effect repeal by implication.
One cannot by the wildest stretch of the imagination arrive at the conclusion, however greatly desired, that it was the intention of the legislature, by the severe taxing of this illegal commodity, to repeal the prohibitions of section 2613, either directly or by implication.
Although there is persuasive argument and authority cited in the impressive brief of appellee, it is apparent to us, from our decisions and the fact that section 2613 has been in force and effect in this State for some fifty-seven years, although repeated efforts have been made to repeal it and the legislature has consistently refused to do so, that it is the intent of the legislature that section 2613 should remain inviolate.
The determination of legislative intent was made conclusive by the enactment of House Bill 112 of the Regular Session of 1966, which enactment declared the policy of this State as fostering, encouraging and vigorously enforcing the prohibition laws. Section 1 of this most recent pronouncement of the legislature's intent states categorically as follows:
SECTION 1. Reannouncing prohibition as the law of this State. The policy of this State is reannounced in favor of prohibition of the manufacture, sale, distribution, possession and transportation of intoxicating liquor and the provisions against such manufacture, sale distribution, possession and transportation of intoxicating liquor, as contained in Chapter 3, Title 11, Recompiled Volume 2A, Mississippi Code of 1942 (section 2613), and *827 elsewhere as provided by law, are hereby redeclared the law of this State.
The appellee says that the statutes as they have been amended, particularly by the application of State Tax Commission Rules 48 and 65, clearly establish the fact that the State of Mississippi is now engaged in a multimillion dollar lucrative liquor business. Even if this be true, the appellee overlooks one fundamental rule of our sovereignty, and that is the legislature has the power to enact any law it sees fit, be it sincere or hypocritical, moral or immoral, wise or foolish, beneficial or harmful, provided it does not violate the prohibitions of the State or Federal Constitution. See Moss v. Mississippi Live Stock Sanitary Bd., 154 Miss. 765, 122 So. 776 (1929); State v. J.J. Newman Lbr. Co., 102 Miss. 802, 59 So. 923, 45 L.R.A.,N.S., 851, sugg. of error overruled 103 Miss. 263, 60 So. 215, 45 L.R.A.,N.S., 858 (1912); 49 Am. Jur. States §§ 33, 36 (1943); 16 C.J.S. Constitutional Law § 106 (1956).
Although appellee repeatedly asserts that the sales taxes imposed on the sale of liquor are proof of the fact that the State is in the liquor business for revenue only, the fact nevertheless remains that the punitive aspects of the legal statutes are to be reckoned with and the appellee has either overlooked or disregarded them. In Bishop v. Bailey, 209 Miss. 892, 894-895, 48 So.2d 588, 590 (1950), we stated:
The sale of intoxicating liquor, in our State, is unlawful. Punitive sanctions or penalties are imposed against violators. Section 2613, Code 1942. Courts may require a bond to keep the peace also. Section 2596, Code 1942. In aid of the enforcement of the law, additional remedies are afforded: (1) The recovery of a $500 tax or penalty by the state and county. Section 2639, Code 1942. (2) The suppression of the place as a nuisance. Section 2640, Code 1942. And (3) the collection of the so-called Black Market Tax of 10%. Chapter 139, Laws of 1944.
* * * * * *
The State's failure to prosecute some of the offenders against its laws does not exempt all others from the consequences of their acts. The operator of an unlawful business, who fails to pay the tax required of him, cannot be heard to complain if other lawful penalties are exacted. Nor can he justly claim discrimination if like penalties are not imposed against others who have never defaulted in the payment of their Black Market Tax.
We feel that this is as good a statement of the law today as it was when it was announced in that case.
Our interpretation of the statutes enacted subsequent to the decision in Bishop v. Bailey, supra, is in harmony with the holding therein for the reason that we still feel that the primary intent of the legislature in the enactment of the tax statutes was to impose a penalty and a tax upon those persons who are deliberately violating section 2613 and the other liquor statutes. The requirements of the statutes and their regulation amount to nothing more than a method to expedite the collection of the tax imposed on the illegal commodity.
In termination of this particular error, we point out that the State Tax Commission is not a law enforcement agency and the legislature has not seen fit to vest in it the powers which are now accorded the sheriffs and policemen of this State. See Miss. Const. § 167; Miss.Code Annot. §§ 2467, 2615, 3374  100, 4254 (1956), and 10223 (1952).
For the above reasons, we hold that this assignment of error is not well taken.
The third error assigned and urged by appellant is that the trial court erred in adjudicating that the prohibition laws of this state are being unconstitutionally applied by the representatives of the State of Mississippi, *828 and therefore the appellee was denied due process of law and the appellate court erred in affirming this judgment.
The appellee predicated his assertion that he was denied equal protection of the laws under the 5th and 14th Amendments because there is discrimination in the enforcement of the law in the State of Mississippi and Hinds County.
At the outset, it should be recognized that the State has full and complete control over all matters relating to intoxicating liquors within its borders. It also should be recognized that the regulation pertaining to the sale or possession or use of intoxicating liquors does not violate any constitutional rights of the citizens. It is purely within the prerogative of a state to say whether or not a citizen shall possess or use intoxicating liquor, and this right is guaranteed to the states by the 21st Amendment to the United States Constitution. When the 18th Amendment to the United States Constitution was repealed by the enactment of the 21st Amendment, it was expressly stated in section 2 of that Amendment as follows:
The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.
The Federal Government by the passage of the 21st Amendment specifically recognized the right of the states to regulate completely the delivery or use of intoxicating liquors within their respective boundaries. Section 2, since it allows the states to constitutionally prohibit the use of intoxicating liquor a fortiori, it allows the states also to prohibit the possession of intoxicating liquor since possession is an essential and vital part to the delivery or use of intoxicating liquor.
In Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 1259, 1262, 16 L.Ed.2d 336 (1966), the Supreme Court of the United States, when construing Chapter 531, 1964 Session Laws of New York, which worked substantial changes in the State's Alcoholic Beverage Control Law, which statute appellants claimed violated, among other rights, the due process clause and the equal protection clause of the 14th Amendment, found those contentions to be without merit. The United States Supreme Court stated:
Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." As this Court has consistently held, "That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories." United States v. Frankfort Distilleries, 324 U.S. 293, 299, 65 S.Ct. 661, 664, 89 L.Ed. 951. Cf. Nippert v. City of Richmond, 327 U.S. 416, 425, n. 15, 66 S.Ct. 586, 590, 90 L.Ed. 760. * * The first contention amounts to a claim of a deprivation of due process of law based on the argument that § 9 is not designed to promote temperance and that it is an unwise, impractical, and oppressive law. But it is not "the province of courts to draw on their own views as to the morality, legitimacy, and usefulness of a particular business in order to decide whether a statute bears too heavily upon that business and by so doing violates due process. Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used by this Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy. * * * The doctrine * * * that due *829 process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely  has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. * * *" Ferguson v. Skrupa, 372 U.S. 726, 728-730, 83 S.Ct. 1028, 1030-1031, 10 L.Ed.2d 93.
Moreover, nothing in the Twenty-first Amendment or any other part of the Constitution requires that state laws regulating the liquor business be motivated exclusively by a desire to promote temperance. * * *
Appellee belabors extensively his inherent right to possess intoxicating liquors, but this question was decided by this Court in Kelly v. State, 237 Miss. 112, 113 So.2d 540 (1959), in which case it was held that where, under a statute permitting a county to exclude the transportation, storage, sale, distribution, receipt and/or manufacture of wine or beer of specified alcoholic content from the county, possession for personal consumption was legal, that a subsequently enacted statute providing that in those counties where voters had elected to exclude transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages subsequent to 1934 the possession of same was illegal was a constitutional exercise of the legislature's plenary power to regulate traffic in intoxicating liquors. The Kelly case refers to Mississippi Code Annotated section 10208 (1952), and we quote subsection (b) thereof:
(b) In any county which has at any time since February 26, 1934, elected, or which may hereafter elect, to prohibit the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages in such county, it is hereby declared to be unlawful to possess such beverages therein. Any person found possessing any beer or wine of any quantity whatsoever in such county shall, on conviction, be imprisoned not more than ninety (90) days or fined not more than five hundred dollars ($500.00) or both such fine and imprisonment.
The appellee urges that because in certain of the river, coastal and other counties the law is systematically not enforced by the local law enforcement officers, this is substantial proof that this defendant is being denied his constitutional rights of equal protection and due process of law for the reason that there exists a deliberate or intentional pattern or systematic plan of not uniformly enforcing the laws in those respective counties. While it may be conceded that sheriffs and police officers are enforcement officers of the State, it does not follow that the State has control and direction over the sheriffs and police officers without express legislative authority. As a matter of fact, the exact opposite is now true, and this is one of the reasons why law enforcement has been lax in certain counties of this State. The State cannot and does not exercise any law enforcement control over the uniform procedures of a county or city therein except in those limited fields in which the Governor of the State has authority to act with the use of the state militia, or with certain designated officers of the highway patrol. On this point, the Governor of this State recently stated in a message to the legislature:
On the other hand my recommendation to give the Governor what it will require to dry this State up like the Sahara Desert is an equally serious matter. One may ask if I do not have such power now. You could say that I do have this power but, in fact, I have only the National Guard at my disposal and the cost of its prolonged use would be prohibitive.
Insofar as the decision of the issues here involved is concerned, it is not necessary for us to resolve the question of improper law enforcement on a statewide *830 basis. The law enforcement in the State of Mississippi is on a county basis and the people of this State elect their chief law enforcement officer, the sheriff, by counties, and this is also true of the municipal police officers of this State who are appointed by elected local officials in the municipalities. While the State requires all duly elected law enforcement officers to take an oath of office binding them to carry out impartially the duties of their office in the enforcement of the laws, Mississippi Constitution section 268, the fact nevertheless remains that the State of Mississippi, without additional legislation, has little means whereby it can compel and require the county and city law enforcement officers to perform their duties in accordance with their oaths. This is true although they may be prosecuted and removed from office for failure to perform their duties. Miss.Code Annot. §§ 2297, 2298, 2308, 4053, 4254 (1956). Moreover, under certain conditions expressed in Mississippi Code Annotated section 4054 (1956), the Governor of Mississippi is required to remove officers from office.
There is ample testimony to the effect that in coastal, river and some other counties, because of the autonomy of the local law enforcement officers, there has been a refusal, almost arbitrary, to carry out the requirements of the liquor statutes. On the other hand, the proof is abundant that in a majority of the counties of this State the liquor laws are enforced by the county and municipal law enforcement officers, and that indictments are being returned and convictions obtained. Mississippi Code Annotated sections 2613 and 2614 (1956) lists hundreds of cases, past and present, which conclusively show that in a majority of the counties of this State, Mississippi's liquor laws are respected and enforced.
In this connection it might be noted in passing that there is evidence to the effect that many local law enforcement officers have refused to aid officials of the State Tax Commission in the enforcement of the tax provisions, these being the same statutes that appellee contends constitute a repeal of and a substitution for section 2613.
From the record we conclude that the element of purposeful or intentional discrimination, which appellee must show in order that he can justly assert that he has been denied equal protection of the laws under the 14th Amendment, is lacking. We conclude that the proof of discrimination is wanting. The record does disclose that Sheriff Shelton with only a few deputies, insofar as law enforcement in Hinds County is concerned, has shown unusual effort to enforce the laws indiscriminately and has been successful in doing so. The fact that he made no attempt to enforce the liquor laws inside the corporate limits of the City of Jackson does not amount to deliberate, purposeful discrimination. The record indicates that it is a uniform custom throughout the State of Mississippi to permit the counties to run their internal affairs, to operate their law enforcement programs, and the cities have their own court procedures which are recognized by this State. Shelton testified that there was an agreement to the effect that he would enforce the laws in the county and leave city law enforcement to the city police. While it is true that Chief Rayfield testified that no agreement relating to exclusive city law enforcement operations was in effect, nevertheless Deputy Sheriff Shelton believed such an agreement to exist.
We find the following statement in 16 Am.Jur.2d Constitutional Law § 541:
Mere errors of judgment by officials will not support a claim of discrimination violative of constitutional guaranties of equality. Moreover, it is not enough to show that a law or ordinance has not been enforced against other persons as it is sought to be enforced against the person claiming discrimination. Mere laxity in the administration of the law, no matter how long continued, is not and *831 cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity. Some courts have taken the position that in the absence of facts properly pleaded, showing a fixed and continuous policy of unjust discrimination on the part of a municipality, they will not enter on a consideration of the question whether its administration is in violation of the guaranties as to the equal protection of the laws.
See also Mackay Tel. & Cable Co. v. City of Little Rock, 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863 (1919).
Though not treated in briefs of counsel, there is nevertheless involved in this case a question of grave importance which transcends all others affecting the basic operations of our State Government. It is the duty of this Court not to shrink from asserting and exercising the power vested in it by the Constitution in the tradition of our common law system of jurisprudence, and this portentous question of whether or not the public policy of the State regulating intoxicating liquors and the enactment of laws relating thereto are within the exclusive province of the legislative branch of our State Government. In this connection, it should be kept in mind that the Constitution of Mississippi is a solemn document, the basic features of which separate and divide the powers of government among the three branches, and enjoin each branch from usurping the power of the other two. Mississippi Constitution section 1 is as follows:
The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Section 2 is in part as follows:
No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.
It is well to be retrospective and to contemplate the source of our power and duty, and to remind ourselves that this Court has the power to construe the Constitution and thus define the powers of the three branches of our Government. This calls for objective deliberation and for the exercise of self-restraint on the part of this Court not to overstep its proper and rightful power. Therefore, with due caution, we should endeavor to avoid usurping powers that are not rightly ours, in the light of the knowledge that men and their self regulatory institutions often fail to practice self-restraint and that history itself is largely the record of the endless struggle between men and the lust of governments to usurp and wield absolute power. Today is a unique time for the exercise of self-restraint by all courts of last resort. Ours is a time when people generally are impatient and anxious to accomplish by any means available that which they dream to be desirable social ends. Legislative action and the processes of properly amending the Constitution are too laborious and tedious methods for those who would fain rectify the apparent inadequacies in society which have failed of prompt correction by other devious means.
An insidious notion, gaining in popularity, that holds capacity for serious mischief to our governmental structure is a view of the judicial function, which is that all the maladjustments, deficiencies, or dissentions in our society which have failed of correction by other means should find a panacea in the courts. Conceding, as is vehemently argued by appellee, that the liquor situation in Mississippi is verily a social problem which may have been poorly managed and fraught with hypocrisies, and that corrective measures may be sorely needed, nevertheless, *832 this Court will not yield to the temptation, however attractive it may appear, to attempt the correction of the problem and do by judicial fiat that which the Constitution as well as the best tradition of our system of jurisprudence sternly forbids this Court to do.
We find the following discussion in the case of Mississippi State Tax Commission v. Flora Drug Company, 167 Miss. 1, 19-20, 148 So. 373, 376 (1933):
In volume 1, § 65, Sutherland on Statutory Construction (2d Ed.), it is said that: "Statutes cannot be declared invalid on the ground that they are unwise, unjust, unreasonable or immoral, or because opposed to public policy, or the spirit of the Constitution."
In 1 Cooley's Constitutional Limitations (8th Ed.) vol. 1, at page 345, that learned author says that: "The moment a court ventures to substitute its own judgment for that of the Legislature, in any case where the Constitution has vested the Legislature with power over the subject, that moment it enters upon a field where it is impossible to set limits to its authority, and where its discretion alone will measure the extent of its interference. The rule of law upon this subject appears to be, that, except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil, but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason and expediency with the lawmaking power, nor can it consider the motive which inspired the passage of a statute in determining the question of its validity." In note 1 to this quotation it is said that: "If the Legislature should pass a law in plain and unequivocal language within the general scope of their constitutional powers, I know of no authority in this government to pronounce such an act void, merely because, in the opinion of the judicial tribunals, it was contrary to the principles of natural justice; for this would be vesting in the court a latitudinarian authority which might be abused, and would necessarily lead to collisions between the legislative and judicial departments, dangerous to the well being of society, or, at least, not in harmony with the structure of our ideas of natural government. * * *
See also Russell Inv. Corp. v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102 (1938); Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436 (1938).
Therefore, we emphatically decline to usurp legislative prerogative and repeal or modify the statutory law of this State relating to liquor.
It can be conceded that under a motion to quash challenging the constitutionality of a statute that evidence is admissible and therefore insofar as the case at bar is concerned the lower courts were eminently correct in permitting the testimony to be given in support thereof. It is unnecessary for us to consider the question of admissibility of evidence under the demurrer, and we do not do so, but in passing we point out that counsel cannot by agreement alter or extend the reach or the inherent potential of a pleading, and ordinarily evidence is not admissible under demurrers because the demurrer admits everything well pleaded going to the attendant liability.
Since we have determined that there has not been any deliberate or intentional or *833 systematic plan of discrimination against appellee in this case and that the intent of the legislature in enacting the tax statutes was not to modify, alter or repeal the prohibitions in section 2613, with due deference to the opinions of the county and circuit courts, it follows that the motion to quash and the demurrer should not have been sustained and this cause is therefore remanded to the county court for trial on its merits.
In conclusion, although unsuccessful in their objective to vitiate or repeal the operation of the law for the discharge of appellee, nevertheless, naught astute counsel could do has been left undone, and they are to be commended for their diligent and adroit presentation of every possible defense in behalf of appellee.
For the foregoing reasons, the judgment is reversed and the cause remanded to the county court for trial on its merits.
Reversed and remanded.
All Justices concur.